## Baldwin and others *against* Breed and wife.

*H* and *W* being tenants in common of a certain parcel of land, *W*, with the consent of *H*, erected, at his sole expense, a store thereon, permanently annexed to the freehold; in an action of partition, brought by *W* against *H*, alleging that the plaintiff and defendant were joint owners, in equal moieties, of the land, and that the plaintiff was the sole owner of the store, to which the general issue was pleaded, it was held, that in the absence of any special agreement between the parties, the store could not be treated as the separate property of *W;* and no such agreement being shown, *W* was not entitled to a verdict on the issue joined. [By three judges against two.]

This was a writ of partition, in which the plaintiffs demanded, that the defendants should apart, divide and set out to them, one moiety or half part of a certain tract of land, containing about 40 rods, with one-half of a dwelling-house and barn, and the whole of a certain store, thereon, lying in *Stonington* borough, in the town of *Stonington,* bounded, &c. The declaration alleged, that the plaintiffs and defendants held said tract of land together and undivided, as tenants in common, in such manner and proportion that it belonged to the plaintiffs to have and to hold in severalty one half part of said land, house and barn, and the whole of said store, and to the defendants to have and to hold in severalty, the other half of said land, house and barn ;—and that the plaintiffs had a right to have their proportion and part set out, by proper metes and bounds, to be holden in severalty, so that the plaintiffs and defendants their several parts might appropriate to themselves, and occupy the same in severalty.

The defendants pleaded, that they were not tenants in common with the plaintiffs of the premises described in the declaration, and did not hold the same, in manner and form as alleged ; on which issue was joined.

The cause was tried at *New-London, September* term, 1842, before *Church*, J.

Prior to and at the time of the erection of the store mentioned in the declaration, in the year 1833, *Edward Hancox* was the joint owner of said lot with *Benjamin Wright*, the other joint owner, each owning an undivided moiety.   On the death of *Hancox*, some time afterwards, his interest in the premises was by him devised to his daughter *Prudence*, the wife of *John Breed ;* they claiming, that if the store was built at the expense of *Wright*, it was to be settled for, in part at least, by the adjustment of the account for rents and profits. On the 1st of *December*, 1834, *Wright* mortgaged to *Nathan Wheeler*, the one undivided half of said lot, with the whole of the store and half of the other buildings, to secure the mortgagee for his indorsement of the mortgagor's note for 714 dollars, 27 cents, payable at the *Stonington Bank*, twelve months after the date thereof, and for his indorsement of future notes, not exceeding in the whole 1000 dollars.   On the 1st of *October*, 1835, *Wright* mortgaged the premises to *Simon Carew*, to secure the payment of two notes, amounting to 309 dollars, 35 cents ; and on the same day, he mortgaged the premises to *Joseph Cheesebrough*, to secure the payment of a note for 136 dollars, 45 cents.   On the 9th of *April*, 1836, *Wright's* interest in the mortgaged premises was, by the levy of execution, set off to *Peleg Brown* and *Andrew Dimock*, at the sum of 170 dollars, 20 cents ; *Wright's* part of the premises, with the store, being appraised at 145 dollars ; and the mortgage to *Wheeler*, including the note for 714 dollars, 27 cents, and another note for 100 dollars, subsequently indorsed by *Wheeler* for *Wright*, being estimated at the sum of 833 dollars, 80 cents.   On the 30th of *March*, 1837, *Brown* and *Dimock* conveyed to *Wheeler* their interest in the premises acquired by said levy ; and on the 23d of *March*, 1840, *Wheeler*, by deed of mortgage, with covenants of seisin and warranty, conveyed half of the premises and the whole of the store, to *Billings Wheeler*, to secure him for his indorsements for the mortgagor on notes to the

plaintiffs in this action, for different amounts due to them respectively. *Billings Wheeler* then, by a deed which recited the last-mentioned deed, in consideration that the plaintiffs in this suit had agreed to receive from him an assignment of his interest under the mortgage, and to make no further claim upon him on account of his indorsements of *Nathan Wheeler's* notes, conveyed to the plaintiffs, his, *Billings Wheeler's*, right, title and interest under said mortgage ; and on the 19th of *October*, 1840, *Nathan Wheeler* released his interest in the premises to the plaintiffs.

Under these circumstances, the plaintiffs offered *Nathan Wheeler*, as a witness, to prove, that *Hancox*, when *Wright* was about to mortgage said store to him, informed him, that *Wright* owned the whole of the store, and that *Hancox* made no claim thereto. Objection having been made to the admission of this witness, on the ground that he had conveyed said store, with covenants of warranty, in the deed to *Billings Wheeler*, the plaintiffs offered evidence of his, *Nathan Wheeler's*, discharge under the bankrupt law of the *United States*, upon his petition against his creditors ; and it was admitted, that the grantees of *Nathan Wheeler* had never been ousted or disturbed in their enjoyment of said property. The defendants still claimed, that the witness was inadmissible. The court overruled the objection ; and thereupon, the witness testified, that *Hancox* made the above-mentioned admission.

As to the mortgages to *Carew* and *Cheesebrough*, the plaintiffs offered in evidence their deeds of release to the plaintiffs, executed after the commencement of this suit, in which, in consideration of *Wright's* being paid the notes secured by their mortgages, they released their interest in the premises to the plaintiffs. The defendants objected to this as evidence of title in the plaintiffs, and prayed the court to instruct the jury, that with this title the plaintiffs could not sustain this action, under their declaration ; but the court declined so to charge the jury.

The defendants further prayed the court to instruct the jury, that *John Breed* having no other interest in the premises than an estate for life in right of his wife, she being the owner in fee of the undivided half of the premises, there was a material variance between the declaration and evidence as to

New-London,
July, 1843.

Baldwin
v.
Breed.

the defendants' title; but the court did not so instruct the jury.

The plaintiffs obtained a verdict in their favour; and the defendants moved for a new trial.

*Strong*, in support of the motion, contended, 1. That upon the facts proved and admitted on the trial, the court should have instructed the jury, that the plaintiffs could not sustain their action. In support of this position he insisted,

1. That the plaintiffs were not the sole owners of the store. Whatever claim *Wright* might have had in the adjustment of the account for the betterments upon and the rents of the property, the *legal title* to the land was in him and *Hancox*, as tenants in common; and the store erected upon that land, becoming part of the freehold, became at law their joint property. *Benedict* v. *Benedict*, 5 *Day*, 464. *Osborn* v. *Humphrey*, 7 *Conn. Rep.* 335. *Isham* v. *Morgan*, 9 *Conn. Rep.* 374. *Prince* v. *Case*, 10 *Conn. R.* 375. If the plaintiffs have an equitable claim for the erection of the store, they are not remediless; a court of chancery being fully competent to afford them relief.

2. That the interest of the defendants is not correctly set forth, as it should be, where the title of the parties may be affected by the decree. Though in the writ *Prudence Breed* is described as the wife of *John Breed*, yet in the declaration there is no allegation that his title is *in right of his wife*. *Non constat* that as between *Breed* and wife themselves, partition should not be made. A judgment under this declaration would show *Breed* and wife to be the joint owners of the fee, as to the one moiety; and not, as is the fact, *Breed* to be tenant for life of the moiety, and his wife the owner in fee.

3. That the plaintiffs are not, as they allege, the owners of the other moiety. In the first place, as having the legal estate of the first mortgagee, they cannot make partition, either by deed or suit. They have no power, without their assent, to bind those who come after them. Secondly, as having the ultimate equity of redemption, they have not this power; and for the same reason, they have no power to bind those going before them. Thirdly, the release by *Carew* and *Cheesebrough* cannot aid the plaintiffs. The debt secured by these mortgages, and subject to which the execution was levied,

having been paid by *Wright,* after the levy, as between these parties, *Wright* held their interest, and he is not a party to these proceedings. Besides, the release by *Carew* and *Cheesebrough* was after the commencement of this action, and therefore cannot affect it.

2. That *Nathan Wheeler* was improperly admitted as a witness, as he was directly interested, by his own testimony, to establish an exclusive title in himself to the store; he having warranted it to *B. Wheeler,* who conveyed his right to the plaintiffs. Nor is this difficulty removed, by his discharge under the bankrupt law; his liability as warrantor, when there had been no eviction, not being a ground of claim under the bankrupt proceedings.

*Pomeroy,* contra, contended, 1. That it was not necessary, as a prerequisite to partition in this case, for the tenants in common to settle the account for rents and profits of the premises, not only as between themselves, but also as between those under whom they respectively hold. There was no proof offered, or could be received under the issue in this case, that the plaintiffs, or those under whom they claim, or any one of them, were in arrear to the defendants, or the estate of *Hancox.*

2. That the plaintiffs are entitled to partition, whether the appraisers estimated *Nathan Wheeler's* mortgage too much, or too little. Neither would a wrong estimate of the mortgage of *Carew* and *Cheesebrough* invalidate the plaintiffs' right to partition. They have the equity of redemption—the mortgagor's title. *Punderson* v. *Brown,* 1 *Day,* 93. *Porter* v. *Seeley,* 13 *Conn. R.* 564.

3. That a new trial ought not to be granted on account of the mortgage to *Billings Wheeler,* and his assignment thereof to the plaintiffs. The plaintiffs never claimed title under or by virtue of that mortgage deed, or the assignment thereof; nor did they introduce it on the trial.

4. That *Nathan Wheeler* was a competent witness, and would have been, even if the mortgage deed to *Billings Wheeler* had been introduced by the plaintiffs. He has no interest in the event of this suit. The debts for the security of which that mortgage was given, are all discharged, as against him, by his certificate in bankruptcy. There are no

covenants in a mortgage deed, that will sustain a suit, either
at law or in equity, or by virtue of which the mortgagor can be compelled to pay one cent, after the mortgage *debt* is paid or discharged.

5. That a new trial ought not to be granted, on the ground that the defendants' title is not well described in the declaration. The ownership of the defendants, as alleged in the declaration, is sufficient to entitle the plaintiffs to a partition. The exact nature and extent of the defendants' title, may not be known to the co-tenants; and they can have no mode of settling exactly what that title is. Must they wait until every question of this sort is settled, before they can have partition? The issue is not whether the defendants hold in fee, or for life; but, in the language of the statute, whether they hold as joint tenants, tenants in common or coparceners. If so, their title is well described, and described as proved.

WILLIAMS, Ch. J. This was a writ of partition, in which the plaintiffs claimed, that they and the defendants were equal owners of the land described, and the buildings, except a store, thereon, which, they aver, belongs to them in severalty. The defendants plead, that they do not hold in manner and form, &c.; and a verdict is found for the plaintiffs.

The motion shows, that it was proved and admitted, that *Hancox*, under whom the defendants claim, and *Wright*, under whom the plaintiffs claim, were tenants in common of the land claimed to be aparted; and that *Wright* erected the store upon the premises, at his sole expense. It is also claimed, and not denied, that the trial below proceeded upon the supposition that the plaintiffs had proved, that the store was placed upon this land, by *Wright*, with the consent of *Hancox*; and unless it were so, we think there could hardly have been a serious question in the case. We proceed, therefore, upon the ground, that this fact constitutes part of the case; and the result to which a majority of the court have arrived upon this point, makes it unnecessary to consider the other questions argued before us.

There is no claim that the building in question was not erected in the manner in which other buildings of this kind are erected; that is, it was permanently annexed to the freehold. Nor is it pretended, that there was any contract be-

*New-London,*
July, 1843.

Baldwin
*v.*
Breed.

tween the parties relative to the removal or the ownership of this building, unless such contract can be inferred from the fact that it was built by one tenant in common, with the consent of his co-tenant. But the plaintiffs contend, that the building thus erected, belongs to him who placed it there; while the defendants contend, that it follows the ownership of the land.

The general rule of law, that whatever is fixed to the realty, becomes part of it, and cannot be removed, but partakes of all the incidents and properties of the freehold, is one of great antiquity. *Co. Litt.* 4. 53. *Bull. N. P.* 34. And the maxim " *Cujus est solum ejus est usque ad cœlum,*" is not to be discarded as frivolous, when we consider how important it is in the designation of the ownership of property. And although in modern times, it has been found necessary to introduce some exceptions to this rule, yet we agree with Justice *Cowen,* that the actual annexation and total disconnexion is the most certain and practical, and should therefore be maintained, except where plain authority or usage has created exceptions; and the general importance of the rule is so great, that more evil will result from frittering it away by exceptions, than can arise from the hardship of particular cases. *Walker* v. *Sherman,* 20 *Wend.* 653, 4.

The relaxation of the rule has been principally in cases between lessor and lessee, tenant for life and in tail and the remainder-man. 3 *Atk.* 14. 16. *Bul. N. P.* 34. Here, the question does not arise between such parties, but between tenants in common, which case, says the learned Judge before cited, is to be decided on the same principle as if it had arisen between grantor and grantee, or as if partition had been effected by the parties, by mutual deeds of bargain and sale. As between such parties, the doctrine of a fixture's making part of the real estate and passing with it, is more extensively applied than between others. 20 *Wend.* 638. Now, if a deed had been given of this land, by one of the joint owners, and not a word said about the buildings; or if partition deeds had been made between them; it would seem as if there could be no doubt as to the effect of such deeds, and that the buildings would pass with the lands, as well as the fences. *Isham* v. *Morgan,* 9 *Conn. R.* 377. The title of a purchaser or creditor ought not to be qualified or impaired, for want of an enquiry as to which of the tenants in common planted the

New-London,
July, 1843.

Baldwin
v.
Breed.

trees, set the hedges, or erected the fences or buildings : no authority has been shown and no usage proved in support of such a claim. And when we consider the extreme uncertainty as to title, which would result from the adoption of such a principle, and the embarrassments which would attend the purchaser and the creditors, together with the anxious care which our law has shown in making as public as possible the title to real estate, we cannot consent to incorporate the principle contended for, unless compelled by authority.

A little change in the situation of the parties in this case, will serve to show some of the difficulties which will result.

*Hancox*, we will suppose, wants to sell his interest in this land ; the purchaser examines the title, and finds, that *Hancox* and *Wright* are the owners, and have the record title ; he goes no farther, but completes the purchase ; after which *Wright* comes out with a claim, that this shop was his alone, and thus defeats the record title. Or a creditor of *Hancox* sets off one undivided half of this land and buildings, as his ; he must be deprived of the store, in consequence of a private agreement between the tenants in common. Or perhaps a creditor of *Wright* sets off one half the land and buildings on execution, as the estate of *Wright ; Wright* may say, that as this was his sole property, the creditor could not take one undivided half ; or perhaps might claim, that it ought to have been sold at the post as his personal property.

When one man voluntarily erects a building upon the land of another, without his consent, he acquires no right in the land, and retains none in the building, but the building becomes the property of him who owns the freehold. *Elwes* v. *Maw,* 3 *East,* 48. *Washburn* v. *Sproat,* 16 *Mass. R.* 449. 5 *Day,* 467. When it is erected by consent of the owner, different consequences may result ; though by strict operation of law, the title vests in the owner of the land. Such, we understand, was the doctrine of this court, in *Benedict* v. *Benedict.* Judge *Swift* says, in strict law, the house belongs to the owner of the soil ; and the same principle is advanced, by Ch. J. *Parsons,* in the case of *Wells* v. *Bannister,* who says, that by strict operation of law, the father (on whose land the son had, by his consent, built a house,) might disturb the son in the possession of the house, and remove him from it. 4 *Mass. R.* 514. It is true, that a court

of law in *Massachusetts*, in the case above cited, held, that a house so built was personal property in the builder ; but it is to be recollected, that there was then no court of chancery in that state ; of course, courts of law must adopt, to some extent, the principles of courts of equity.

In *Prince* v. *Case*, 10 *Conn. R.* 379. we alluded to these cases of *Benedict* v. *Benedict* and *Wells* v. *Bannister*, as somewhat opposed to each other, without an intimation that the former decision was incorrect. In *Parker* v. *Redfield*, 10 *Conn. R.* 490. where the lessor had agreed with the lessee, that he might erect buildings on the land, and, at the end of the term, remove them, this court held, that the lessee had an interest in the buildings entirely distinct from that of the lessor, and that this interest was a subject of taxation. And the court say, the buildings are treated [by the parties] as personal property, and are placed under the controul of the lessee, as any other personal property. As the question there was a mere question of a right to tax, perhaps the result would have been the same, whether the property was treated as real or personal at law. That the court did not intend to overrule or impair the authority of *Benedict* v. *Benedict*, is apparent from the fact that this case is not alluded to at all, in the discussion. And if that case is law, we are not able to discern any ground the plaintiffs can have to maintain this action at law. There, the court say, a court of chancery will give ample relief according to the circumstances of the case, and will apportion justice to the parties. A court of chancery can so mould such agreements, as to do entire justice ; as where a party claimed a parol contract to be carried into effect on the ground of part performance, but the terms of the agreement could not be distinctly made out ; but as possession had been taken and improvements made, the court allowed a reasonable compensation for beneficial and lasting improvements. *Packhurst* v. *Van Courtland*, 1 *Johns. Ch. R.* 274.

But in the case before us, we see no ground even for the interference of a court of chancery. No agreement is proved, as in *Parker* v. *Redfield*, that the shop should belong to *Wright*, or that he might remove it ; nor is there any thing to show, that either party contemplated that it should be the separate property of *Wright*, unless it can be inferred from

New-London,
July, 1843.

Baldwin
v.
Breed.

the consent of *Hancox*, asked by *Wright*. Does the consent of *Hancox* fairly authorise such an inference? For aught we know, *Hancox* may have consented, because he had claims for some other buildings erected, or improvements made, by him. The fact of *Hancox's* consent would no more prove, that he intended the buildings should be the sole property of *Wright*, than *Wright's* having consented that *Hancox* should erect an expensive iron fence, or a hawthorne hedge, would prove, that he expected such hedge or fence should be the sole property of *Hancox*. For necessary and reasonable improvements made by one tenant in common, the other must be accountable; but when unusual or unnecessary expenses are incurred, it might be otherwise, if done without the consent of the co-tenant. Accordingly, it may become important, in reference to the account to be settled, that when any extraordinary expenses are to be incurred, consent should be obtained. And this, we think, accounts entirely for the negotiations between these parties. Each had a right to occupy any part of this land, or to make improvements upon it; but improvements upon the common property must be for the common benefit; and if desired by both, must be at the joint expense. If a person claims that his case is an exception from this rule, the least that can be required of him, is, to show that the contract under which he claims this, demands such a construction: we cannot infer it from the naked fact that the co-tenant consented to his act.

Whatever construction is given to cases where buildings are placed on lands of others, we do not think it can controul a case of this kind, where there is a common interest. In *Parker* v. *Redfield*, the court proceed entirely upon the ground that there was no common interest between the lessee and the lessor, and distinguish that case from *Osborn* v. *Humphrey*, by saying, that there the buildings were evidently erected with a view to their permanent continuance; and there is no intimation of an ownership in them separate and distinct from the ownership in the land. They were in fact a part of the land, as much as fences or any other improvements. 10 *Conn. R.* 498. The case of *Osborn* v. *Humphrey*, was the ordinary case of a tenant for 999 years, erecting buildings on the leased land; and the court say, the buildings are attached to the land. 7 *Conn. R.* 340. And in

*New-London,* *Winn* v. *Ingilby*, 5 *B. & Ald.* 625. (7 *E. C. L.* 214.) the
July, 1843. court of *King's Bench* say, that fixtures erected by the own-
Baldwin er of the freehold, cannot be taken in execution by the sheriff,
*v.* though they might have been taken, if erected by the tenant.
Breed.

In the absence, then, of any special agreement between the parties, we think neither a court of law nor a court of chancery could treat this store as the separate property of one of these tenants in common. And the remark of Ch. J. *Tilghman*, in *Lyle* v. *Ducomb*, 5 *Binn.* 588. is entirely applicable to this case: "The idea of separating the building from the ground on which it stands, is altogether novel, and cannot be carried into effect, without great difficulty."

It has been suggested, that the committee who may go out to make partition, can settle the proportions, and adjust this matter, in such a manner as to do justice between the parties. But the interest and proportions of the respective parties, are settled by the verdict of the jury in this case, and must be conclusive upon the committee. The declaration alleges, that the plaintiffs and defendants are joint owners in equal moieties of this land ; and that the plaintiffs are sole owners of this store. This the defendants deny ; and the jury have found for the plaintiffs. Now, the committee must take this fact for truth, as found, or they may find directly contrary to the verdict of the jury ; which cannot be allowed, any more than auditors can find, that the defendant was never bailiff and receiver. If, therefore, the plaintiffs are not the sole owners of this store, manifest injustice is done, by this verdict.

A majority of the court, therefore, are of opinion, that the plaintiffs ought not to retain it ; and advise a new trial.

In this opinion Waite and Hinman, Js. concurred.

Church and Storrs, Js. dissented.

New trial to be granted.