AMY HUSTED'S APPEAL FROM PROBATE.

A decree of a court of probate accepting a report of distributors setting out dower, may be appealed from.

Where the reversioner, before dower was set out, erected a new dwelling house on the land in the place of an old one, it was held that the widow, in having her dower afterwards set out, was entitled to the benefit of the improvement.

And held that she was not estopped from claiming it by reason of the fact that the reversioner, who was her son and with whom she lived, erected the new house with her approbation and for the more comfortable accommodation of his family and of her as a member of it, and that she occupied it as a member of his family for several years before she applied to have her dower set out.

APPEAL from a decree of a court of probate accepting and approving the report of distributors setting out dower to the appellant in the real estate of Aaron Husted, her late husband ; tried in the superior court before *Sanford*, J.

It appeared on the trial that Aaron Husted by his will

gave all his property, real and personal, to his son Mills H. Husted, subject to the dower of his widow in the real estate. He died in 1857, and from that time she lived in the family of the son on the land until his death, and after that with his widow, on the same place, until her application in 1864 to have her dower set out. At the time of Aaron Husted's death the dwelling house in which he lived, and a barn standing near it, were very old and of little value, being appraised together at $75. This house and barn Mills H. Husted the next year pulled down and erected in their place at his own expense a new dwelling house and barn, and resided in the house with his family and the appellant until his death, and the appellant with his widow after his death. On the 17th of August, 1864, the appellant applied to the court of probate to have her dower set out to her, and the court appointed distributors, who set out to her one-third in value of the real estate of her late husband, estimating the value of the whole as it would have been if the old dwelling house and barn had remained, and without reference to the new buildings erected by Mills H. Husted. The court accepted and approved the distribution, and the present appeal was taken from that decree. It appeared that when the old buildings were torn down and the new erected by Mills H. Husted, it was done without objection from the appellant and with her acquiescence and approbation, and that it was done by him for the more comfortable accommodation of his family, and of the appellant as a member of it. Also that she at once went into the new house and resided in it until 1864. The appellees claimed that upon these facts she was estopped from claiming a dower interest in the new buildings.

The court rendered judgment for the appellees, affirming the decree of the probate court; and the appellant moved for a new trial.

*Loomis* and *Curtis*, in support of the motion, cited 1 Co. Litt. 32 *a;* 2 Bac. Abr. *Dower*, B § 5; Jacob's Law Dict. *Dower; Catlin* v. *Ware*, 9 Mass. 218; *Runey* v. *Edmands*, 15 id. 291; *Stearns* v. *Swift*, 8 Pick. 532; *Parker* v. *Parker*,

17 id., 240 ; *Humphrey* v. *Phinney*, 2 Johns., 485 ; 1 Hilliard Real Prop., 112, §§ 14, 15 ; 1 Washb. Real Prop., 238 ; 4 Kent Com., 65.

*Child*, contra.

1. An appeal does not lie from a decree of a probate court establishing dower. The statute which provides for the setting out of dower, by distributors appointed by the probate court for that purpose, provides that " their doings, being returned to the court of probate, and accepted by it, shall ascertain and establish such dower, and all persons concerned shall be concluded thereby." Gen. Statutes, p. 421, sec. 83. The compilation of 1750 contains substantially the same provision. Statutes of 1750, p. 44. The statutes authorizing appeals from probate courts do not by proper construction apply to this case. Gen. Statutes, p. 231, sec. 88 ; id. p. 441, sec. 156.

2. By the statutory provisions of this state, the widow has " right of dower in one-third part of the real estate of which her husband died possessed in his own right, to be to her during her natural life." Gen. Statutes, p. 421. By the statutes of 1750 she had " right, title and interest by way of dower, in and unto one-third part of the real estate of the said deceased husband, in houses and lands which he stood possessed of in his own right at the time of his decease, to be to her during her natural life." Statutes of 1750, p. 44. What is the real estate of which Aaron Husted died possessed, within the meaning of the statute ? If the question arose under the statute of 1750 would there be any doubt as to the intention of the legislature to exclude the widow from improvements made subsequent to the death of the husband ? By the revision of 1821 the phraseology of the present statute was adopted. " In construing a statute antecedent legislation is to be kept in view." Sedgwick on Stat. & Const. Law, 239. We cannot regard the right of the widow therefore as being more than a right to the third part of the houses and lands of which her husband died possessed in his own right, the words being words of restriction.

3. Although at common law the widow as against the heir

would be entitled to her dower as at the time of the setting out the same, the statute not only changes the rule, but the reasons for the rule cease to exist. *Powell* v. *Monson & Brimfield Manf. Co.*, 3 Mason, 347, 367 ; 2 Scribner on Dower, 558. And this view is adopted by statutory regulations in states where the common law rule is recognized. 2 Scribner on Dower, 559. By statute the widow is a tenant in common with the heir on the death of her husband. *Stedman* v. *Fortune*, 5 Conn., 462. At common law she has no right to claim any specific part of the estate, or enter upon or occupy any part of it, until it is assigned. 1 Washb. Real Prop., 222 ; 2 Bla. Com., 139. At common law the estate is a mere continuance of the estate of the husband. 2 Washb. Real Prop., 152. By statute it is a separate estate, not commencing till the husband's estate ceases. At common law the husband cannot aliene without the wife. By statute the husband has the sole right of alienation.

4. Amy Husted is by her own acts estopped from setting up the claim made by her against the heirs of Mills H. Husted. 2 Scribner on Dower, 251, and cases cited ; *Preston* v. *Mann*, 25 Conn., 118. If, as against a bona fide purchaser, she cannot claim dower at common law, why should she, as against these heirs, claim dower in the improvements ?

5. The acts of Amy Husted operated as a license to Mills H. Husted to build the house, and it is therefore to be regarded as personal estate belonging to him. *Curtis* v. *Hoyt*, 19 Conn., 154 ; 1 Story Eq. Jur., § 655 ; *Town* v. *Needham*, 3 Paige, 545 ; 2 Smith Lead. Cas. (H. & W. ed.) 761 *et seq.* But if, on the authority of *Baldwin* v. *Breed*, 16 Conn., 69, which is clearly distinguishable from this, there is no license between the dowress and the reversioner, she is nevertheless on the above principles estopped ; for it was her duty to claim in the improvements unless intending to waive them, and the estoppel is within the rule of *Taylor* v. *Ely*, 25 Conn., 260.

HINMAN, C. J. This is an appeal from the decree of a court of probate, accepting and approving the assignment of dower in the estate of Aaron Husted to his widow, the appel-

lant.  The appellees make the preliminary question whether
a decree of this character is subject to the general provision
of the statute authorizing appeals from orders and decrees of
probate in the settlement of deceased persons' estates ; and
the claim is made that, by the express provision of the statute,
the doings of the freeholders in the assignment of dower,
when returned to and accepted by the court of probate, are
final, because the statute provides that such proceedings
" shall ascertain and establish such dower, and all persons
concerned shall be concluded thereby." Gen. Statutes, p.
421, § 83.  We, however, are clearly of opinion that it was
not the intention of this statute to take away the right of
appeal given to all persons aggrieved by a decree of probate
in the settlement of an estate.  The only object was to de-
clare such assignment of dower to be final, and to conclude
all parties in interest so long as such decree should remain
unreversed.  It is said that the language of the statute in
relation to appeals from probate does not apply to the case
because the assignment of dower is no part of the settlement
of an estate, and therefore not within the language giving an
appeal to all persons aggrieved by any order or decree in the
settlement of an estate.  If it was true that, by construing
the statute very literally, the words might be regarded as not
broad enough to give the right of appeal in a matter of this
sort, it would still be for the court to determine whether such
a right of appeal is not within the spirit of the statute and
therefore to be held to come within its provisions ; as it is
very manifest that the legislature never could have intended
to leave so important a matter as the assignment of dower to
the final determination of the freeholders and the court of
probate, when every other proceeding in the settlement of an
estate is the subject of an appeal by any person aggrieved.
This is quite obvious from the section of the statute providing
generally for appeals from probate, which, after specifying
orders and decrees in the settlement of the estates of de-
seased persons, and of insolvent debtors, and in the settle-
ment of guardians' accounts, goes on and provides further
for an appeal " in any other matter whatever, unless where it

is otherwise specifically provided by law." Gen. Statutes, p. 231, sec. 88. And if it might admit of a doubt whether the assignment of dower was a matter arising in the settlement of a deceased person's estate, it would still come within and be governed by this general language. But the assignment of dower is certainly in a popular sense a matter arising in the settlement of an estate. An estate cannot be said to be fully settled where there is a widow entitled to dower, until the dower is assigned to her. It is true, it is made the duty of the heirs rather than of the administrator or executor to cause dower to be assigned. But this is no criterion. An estate cannot be said to be fully settled until all parties having an interest in it have had their shares assigned to them, or their debts paid to them, so far as there is estate for that purpose,—no matter whether they are creditors, heirs, legatees, devisees, or the widow, if there be one.

The remaining question relates to the estate to or in which this widow was entitled to dower. The statute gives her " a right of dower in one-third part of the real estate of which her husband died possessed in his own right." Gen. Statutes, p. 421. Does this mean that she is entitled to one-third, either in value, or in the estate itself, just as it was at the time of the husband's death, or one-third of the estate as it is at the time dower is assigned ? The question is important, as it is obvious that buildings, which may constitute the bulk of an estate, may be destroyed before dower is assigned, in which case she would take more than a third, if the husband's death fixed definitely her interest, and might indeed be entitled to all the estate that was left at the time of the assignment of dower ; and where the assignment is long delayed, as in this case, the estate may be greatly improved by building or otherwise, in which case she would take less than a third at the time the dower is assigned. By the common law the widow is entitled to dower as the estate is at the time it is assigned to her. It is so laid down in Bacon's Abridgement, title *Dower*, B, § 5, citing Co. Litt., 32 *a*, and 2 Inst., 82 ; and it is here said " If the heir improve the land by building or sowing it the wife shall receive her dower with

the improvements upon it, because by her husband's death her title was consummate, and the improvements as to her part were *quasi* upon her land ; for which reason likewise, if the land be impaired in value in the time of the heir, she shall share in the loss, unless it were voluntary by the heir himself, and then she shall recompense herself in damages against him." And this rule has been adopted in this country in all the cases where the question has arisen, as appears by the authorities cited upon the appellant's brief; and we are referred to nothing to the contrary.

The question then must be, whether our statute has changed the common law in respect to the right of the dowress to a share of the improvements put upon the estate after the right of dower has accrued, and before it is assigned. There is no material difference between our present and our most ancient statutes on this subject. The old statutes gave the widow "right, title and interest by way of dower in and unto one-third part of the real estate of said deceased husband, in houses and lands which he stood possessed of in his own right at the time of his decease, to be to her during her natural life." Statutes of 1750, p. 44. To a certain extent this law does change the common law in respect to dower. But the statute itself indicates clearly the extent of the change. And when it speaks of giving the wife dower, or, to use the old phraseology, of giving her by way of dower a third part of the real estate of which he stood possessed in his own right, it intentionally uses a technical word, and so far as it does not qualify the meaning of the word in its technical sense it must be assumed that it was the intention to use it in that sense ; in other words to give it its ordinary technical and common-law signification. The statute in plain language limits the right of the dowress to estate possessed by the husband at his death, instead of giving her dower in all the lands of which he was seized during coverture. And this, we think, was the whole change intended.

If we are correct thus far, then the question is whether, since the death of her husband, the widow has done anything to deprive herself of her right to dower in the improvements

which have been put upon the estate, as well as in that portion which remains as it was at the husband's death ; and we are of opinion that she has not. She has resided many years as a member of her son's family, and as there was during this time no attempt to assign her dower, it may be assumed that the use of her portion of the whole estate was a just compensation for her support. The son during this time took down the old buildings and erected others for the more comfortable accommodation of his family, and his mother made no objection but approved of it, and continued to reside with her son until his decease and with his widow afterwards. This is claimed to be conduct on her part which estops her from claiming dower in the new buildings ; or if otherwise, that it amounts to a license to the son to build upon her estate, and that the house so built should be regarded as the son's personal estate. And it is claimed that it was her duty to assert her right to a share of the improvements at the time they were made unless she intended to waive her right to them. But at law the new buildings became annexed to the soil and a part of the realty. There is no claim that they were not annexed to the soil in the usual mode, and permanently affixed to it. The party erecting them was the sole owner of the estate, subject to his mother's dower, and can not be presumed to have erected them with a view to their becoming personal estate. The claim would be stronger had they been erected by the dowress and been claimed by her as personal estate. *Baldwin* v. *Breed*, 16 Conn., 60, is a much stronger case than this, so far as the equity of the party erecting the buildings is concerned ; and yet the court held that the building in that case was a fixture which belonged to the owners of the freehold.

For these reasons we are of opinion that there is error in the judgment of the superior court and we advise a new trial.

In this opinion the other judges concurred.