GARDNER LANDON JR., AND ANOTHER *vs.* WILLIAM PLATT.

A barn erected on stone piers resting on the ground, held to be a part of the realty.

The barn was erected by *H*, the owner of the soil, under an agreement with *P* that the latter should occupy it as his tenant at a stipulated rent so long as he owned the land on which it stood, and that whenever he should sell the land *P* should have the barn at a stipulated price and remove it. Held that this agreement did not render the barn personal property.

*H* afterwards sold the land to *S*, by an absolute deed, duly recorded, but under a parol agreement that the barn should not go with the land. *P* paid *H* for the barn and *S* agreed to let it stand on the land, *P* paying him an agreed rent for the use of the land. During the pendency of this state of things and while *P* was occupying the barn, *S* sold and conveyed the land to *L*, who had no knowledge of the agreement with *P*, or of his claim to the barn. Held that *L* took the barn as a part of the realty.

TRESPASS *de bonis asportatis*, for taking away a barn and the stone piers upon which it stood, with a count in trover, tried upon the general issue, closed to the court. The following facts were found by the court.

Hanford N. Hayes in the spring of 1858, erected the barn in question on a vacant building lot in Bridgeport, owned by him in fee. It was built on and supported by stone piers, placed on the ground in the same way that barns of moderate cost and intended for permanent occupancy are ordinarily built and supported in this part of the country, and was well adapted to be used with the premises, either with or without a dwelling house, and in its construction, manner of support, and general appearance, appeared to have been erected for permanent use upon and with the premises where located.

Hayes on the 29th of August, 1863, conveyed the premises to one Sherman, who, afterwards, on the 23d of July, 1864, mortgaged the same to the plaintiffs, and afterwards on the 8th of April, 1865, conveyed the same by absolute deed to the plaintiffs. All the conveyances were made for valuable consideration, and by warrantee deed with the usual covenants, and without any reservation of the barn, and were all duly executed and recorded. The plaintiffs went into possession of the premises immediately after the last conveyance to them, and the defendant, soon after, without the knowledge or consent of the plaintiffs, removed the barn and stone piers supporting the same from the premises and converted the same to his own use. The barn when removed was worth three hundred and fifty dollars, and the stone piers when removed were worth three dollars.

The barn in its construction and support was equally well adapted to permanency or removal, and was in fact removed without any material injury to the barn or soil. The barn was located on ground inclining toward the south, and was supported by a flat stone placed on the ground at the northeast corner, and by piers of stone laid at intervals on the ground and not laid in cement or mortar; there being in all nine of the piers, including the flat stone, and containing in the whole one and-a-half cart loads of stone.

Hayes, and Platt the defendant, early in 1858, and prior to the erection of the barn, (Platt then being tenant of the premises at the rate of $12 per annum,) entered into a parol agreement that Hayes should erect the barn on the prem-

ises with his own means and rent the whole to Platt at the rate of $40 per year, so long as Hayes should own the premises, and that whenever he should sell the premises Platt should have the barn and pay therefor the sum of $200. Pursuant to the agreement Hayes erected the barn, intending and expecting the same to be removed when he should sell the land, as he expected to do when a favorable opportunity offered, and Platt went into occupancy of the same and continued to occupy the same till he removed the barn. At the time of the sale of the premises by Hayes to Sherman, it was agreed by parol between them that the barn should not be embraced in the sale. After the conveyance to Sherman it was agreed by parol between him and Platt that the barn should stand on the lot till the lot should be sold by Sherman, Platt paying him ground rent of $12 per annum.

At the time of the conveyance by Hayes to Sherman no part of the $200 agreed to be paid by Platt to Hayes for the barn had been paid by Platt, but shortly thereafter a due-bill for $200, " payable in meats, being price as agreed for barn," was given by him to Hayes, and payment on the same by Platt by charges on book against Hayes had begun to be made, but when the same was fully paid there was no evidence to show, though the due bill had been taken up.

It was not claimed that the plaintiffs had any knowledge or information of these facts prior to the taking and recording of their last deed, and the court found that they had no such knowledge or information. They believed the barn to be parcel of the land at the time they received each of their conveyances, and the value of the same went into the consideration paid by them for the land.

The plaintiffs objected to evidence of the parol agreement between the defendant and Hayes, and of the other facts in connection therewith, and the defendant objected to evidence as to the manner in which other barns were usually built. The court admitted the evidence in both cases, subject to the objections taken, and found the facts upon the evidence so received.

Upon these facts the questions as to the admissibility of

the evidence and as to the judgment that should be rendered in the case, were reserved for the advice of this court.

*Seeley*, for the plaintiffs.

1. The barn was erected by Hayes, then the owner of the land, and was a fixture and a part of the realty, and passed with the conveyances. *Parker* v. *Redfield*, 10 Conn , 490 ; *Curtiss* v. *Hoyt*, 19 id., 154 ; *Winslow* v. *Merchants Ins. Co.*, 4 Met., 310 ; *Butler* v. *Page*, 7 id., 40 ; *Richardson* v. *Copeland*, 6 Gray, 536 ; *Smith* v. *Benson*, 1 Hill, 176 ; *Rogers* v. *Woodbury*, 15 Pick., 156 ; *Mott* v. *Palmer*, 1 N. York, 564 ; *Walker* v. *Sherman*, 20 Wend., 636 ; 1 Washb. Real Prop., 7 ; 2 Smith Lead. Cases, 250, 257 ; *Maples* v. *Millon*, 31 Conn., 598 ; *Eastman* v. *Foster*, 8 Met., 19, 26.

2. As between vendor and vendee all fixtures pass. Authorities above ; *Miller* v. *Plumb*, 6 Cowen, 665.

3. The evidence of the agreement between Hayes and the defendant and between Sherman and the defendant was not admissible. It is an established rule of law, against which the intention of the grantor can never be available, that a conveyance of land by necessary consequence conveys the buildings. *Isham* v. *Morgan*, 9 Conn., 377 ; *Baldwin* v. *Breed*, 16 id., 60. And a parol reservation of fixtures, before or at the time of the delivery of the deed, is not admissible to control the ordinary effect of the conveyance. *Noble* v. *Bosworth*, 19 Pick., 314 ; *Mott* v. *Palmer*, 1 N. York, 564. A sale by the owner of the inheritance of a fixture without severance, will not be binding on third persons. *Rice* v. *Adams*, 4 Harrington, 332 ; 2 Smith Lead. Cases, 255, 259.

4. The evidence offered by the plaintiffs was admissible. *Riley* v. *Boston Water Power Co.*, 11 Cush., 11 ; *Morgan* v. *Varick*, 8 Wend., 587 ; *Brown* v. *Sax*, 7 Cowen, 95 ; 1 Hilliard on Torts, 549.

*Beardsley* and *Sumner*, for the defendant.

1. The barn and the stone piers were personal property in their very nature, and independent of any evidence of intention. Bouvier Law Dict., " *Fixtures ;*" *Wiltshear* v. *Cottrell*,

Landon *v.* Platt.

18 Eng. L. & Eq. R., 142; *Smith* v. *Thompson*, 9 Conn., 63; *Naylor* v. *Collins*, 1 Taunt., 19; *Rex* v. *Otley*, 1 Barn. & Adol., 161; *Wansbrough* v. *Maton*, 4 Adol. & El., 884; *Walker* v. *Shérman*, 20 Wend., 636; 1 Hilliard Real Property, ch. 1 § 76; *Wade* v. *Johnston*, 25 Geo., 331; 2 Smith Lead. Cases, 4 Am. Ed., 207; *Dubois* v. *Kelley*, 10 Barb., 496.

2. But if the property was not *per se* personal, it was so by virtue of the understanding and agreement between the defendant and Hayes and Sherman. Bonvier's Law Dict., "Fixtures;" *Curtiss* v. *Hoyt*, 19 Conn., 154; 1 Hilliard on Torts, 541; *Wells* v. *Banister*, 4 Mass., 514; *Teaff* v. *Hewitt*, 1 Ohio St. R., 511; *Ombony* v. *Jones*, 21 Barb., 520; *Brearley* v. *Cox*, 4 Zabr., 287; *Fuller* v. *Taylor*, 39 Maine, 519; *Pullen* v. *Bell*, 40 id., 314; *Ford* v. *Cobb*, 20 N. York, 344; *Frederick* v. *Devol*, 15 Ind., 357; *Crane* v. *Brigham*, 3 Stockt., 29; *Benedict* v. *Benedict*, 5 Day, 464; *VanNess* v. *Pacard*, 2 Peters, 137; *Mott* v. *Palmer*, 1 Comst., 564; 1 Hilliard Real Prop., ch. 1, §§ 18–28; *Godard* v. *Gould*, 14 Barb., 662. And evidence of such agreement and understanding was admissible. Authorities *supra*.

3. The evidence offered by the plaintiffs as to the manner in which other barns of moderate cost and intended for permanent use, are ordinarily built, was irrelevant and inadmissible.

HINMAN, C. J. The plaintiffs were *bona fide* purchasers for value of a lot in the city of Bridgeport, on which there was at the time a barn erected by Hanford N. Hayes, when he was the owner of the lot. Hayes erected the barn at the request of the defendant, under a parol agreement with him that he should occupy it at a stipulated rent so long as Hayes should own the lot, and that when he should sell it the defendant should have the barn and pay therefor the sum of two hundred dollars. Hayes did sell his lot and it was by parol agreed between him and the purchaser that the barn should not be embraced in the sale, though the deed from Hayes made no mention of any such agreement. The plain-

tiffs, having no knowledge of these facts, took deeds of the grantee of Hayes, supposing the barn to be a fixture annexed to the soil, and that it passed to them with it. It is obvious that the plaintiffs acquired a perfect title to the barn by virtue of their deeds, unless the circumstances under which it was erected and occupied rendered it personal estate, not only between the parties to the parol agreement respecting it, but as between the equitable owner under that agreement and the plaintiffs who are *bona fide* purchasers without any knowledge of any equities existing in the defendant in respect to it. The barn was erected on and was supported by stone piers, placed on the ground in the same manner that other barns of moderate cost and intended for permanent occupancy are ordinarily built and supported. It was therefore erected and annexed to the soil in the same manner that nearly all barns in the country which are built of wood are annexed to it. And although the cases as reported do not expressly show it, yet it was undoubtedly erected and supported, and therefore annexed to the soil, in the same manner that the stores which were the subjects of controversy in the cases of *Benedict* v. *Benedict,* 5 Day, 467, and *Baldwin* v. *Breed,* 16 Conn., 60, were erected and annexed to the soil, and as all wooden buildings set upon stone foundations necessarily must be. They are only annexed to the soil by being placed upon stone foundations which are sometimes laid upon the ground and sometimes to some extent let into it, depending generally in this respect upon whether they are provided with cellars ; and as this is not the case with barns generally, the one in question, in the language of Chief Justice Williams in *Baldwin* v. *Breed,* was erected in the manner of other buildings of the kind, and is therefore to be treated as such buildings always have been, as permanently annexed to the freehold.

*Prima facie* then the barn in question was a fixture and as such passed by the deeds to the plaintiffs. Was there any thing in the circumstances under which it was erected to change it into a personal chattel as against the plaintiffs, who purchased supposing it to be what in fact it appeared to be, a

part of the freehold ? The cases where buildings have been held to be personal estate have been generally those where one man has erected a building on the land of another under an understanding or agreement that he should own the building, and not cases where the owner of the soil has himself erected a permanent building upon his own land, whether by agreement with another or otherwise. Where the building is erected on the land of another an agreement may have the effect of preventing it from becoming a fixture, and so may relieve it from the operation of the statute of frauds as being an agreement concerning an interest in real estate; but where it is erected by the owner of the soil, and is permanently annexed to it, it seems to be as clearly within the statute as would be a sale of the freehold itself. And we think it can make no difference in this respect that the building was to be thereafter leased for a time and then sold to another. In this respect it would be very similar to an agreement to purchase real estate of some third person and after the purchase to lease it for a term of years and finally to sell it at a stipulated price. If an agreement of this sort would be within the statute of frauds we see not why the agreement set up by the defendant is not. The record in this case showed a clear unincumbered title in the plaintiffs' grantor, and it appears to us that the plaintiffs had a right to rely upon the title thus shown. The agreement under which the barn was built, in connection with the fact that the defendant went into possession, and has occupied the barn ever since, created an equity between the original parties to it, that would have enabled either of them, on his performing his part of that agreement, or on his tendering such performance, to have called upon the other party for performance on his part. And as the plaintiffs' grantor had notice of the agreement he in equity was bound by it. But as this was not asked for until the title to the property came regularly into the hands of the plaintiffs, it is now too late to ask for a remedy of this sort, especially in a court of law. *Prima facie,* as we have said, the building was a fixture which the record showed belonged to the plaintiffs' grantor, and the

plaintiffs as *bona fide* purchasers ought to be protected in their purchase. In strict law, as remarked by Judge Swift in *Benedict* v. *Benedict,* the building belongs to the owners of the soil. The plaintiffs' equity, as *bona fide* purchasers without notice, is obviously equal to the defendant's. They have also the strict legal title under these conveyances, and this legal title will therefore prevail, upon the familiar principle applicable to cases where the equities are equal and one of the parties has the legal title.

Nothing has taken place since the barn was erected to change its character from one species of property to the other. If it was so annexed to the soil at first as to become a fixture, there has been no severance of it since. The case, therefore, turns upon the effect of the parol agreement between Hayes and the defendant. Did that agreement prevent the building from becoming a fixture? If it did not then it remained a fixture until after the plaintiffs took their deeds. Now had the barn been erected by Hayes previous to his agreement with the defendant, and a similar parol agreement had been afterwards made in respect to it, no one would claim that such an agreement would have any effect to change the nature of the property from real to personal estate, until it was fully performed ; and considering that it was erected by the owner of the soil and was annexed to it in the usual mode, we are of opinion that the parol agreement, although it was in a sense the cause of its erection, had no other effect in impressing a character upon the property than it would have had had the building after its erection been the subject of a similar agreement.

In the decision of this case we have felt it to be our duty to rely upon the authority of our own cases, and upon a practice which with us is believed to be uniform, of treating buildings of this description as permanent fixtures annexed to the soil. We are aware that in England, by some if not by most of their cases, where wooden buildings are erected on brick or stone foundations, and are not let into or fastened to the brick or stone work, and are only held to their places by their own weight, they have been held to be personal prop-

erty only.  *Rex* v. *Otley*, 1 Barn. & Adol., 161, and *Wansbrough* v. *Maton*, 4 Adol. & Ellis, 844, are cases of this sort. But this has never been considered as the law with us, and to hold it to be so at this day would in effect change the character of very many, if not of most, of the wooden buildings in the state, from real estate into mere personal chattels.   Such buildings by our practice have always been treated as real estate.   As such they have been sold by executors and administrators to pay debts of deceased persons, have been distributed to heirs and devisees in the settlement of estates, and have been levied upon by attachments and set off on executions, and this practice, though not directly decided in any reported case to be correct, for the reason probably that the correctness of the practice has never been questioned, has yet been impliedly sanctioned in all the cases in our reports where it has been in any wise the subject of consideration. *Benedict* v. *Benedict*, 5 Day, 467 ; *Osborne* v. *Humphrey*, 7 Conn., 335 ; *Isham* v. *Morgan*, 9 id., 377 ; *Prince* v. *Case*, 10 id., 379 ; *Parker* v. *Redfield*, id., 490 ; *Bush* v. *Golden*, 17 id., 594 ; *Curtiss* v. *Hoyt*, 19 id., 154.   If the law thus sanctioned is to be reversed and a new rule to be adopted on this subject, we think it should only be done by the legislature.

As there was no controversy in respect to the facts in the case and it all depended upon the question of law which we have been considering, we advise the superior court to render judgment for the plaintiffs.

In this opinion the other judges concurred.