*Twenty-first Judicial District.*

## In the Court of Common Pleas of Schuylkill County.

(*In Equity.*)

---

### LEIBIG *v.* GINTHER.

1. A court of equity will not interpose to remove a structure already completed, but will turn the party over to his remedy at law.

2. When the plaintiff stands by and sees the defendant erect a mill dam on his (defendant's) premises, at a great expenditure of money, and makes no objection that the water will overflow his land, but acquiesces in it until completion, a license is implied.

3. For consequential damages for a breach of the terms of the license, the plaintiff must resort to an action on the case.

Opinion delivered May 27, 1872, by

WALKER, J. This is an application for a decree heard upon bill and answer, and the facts briefly stated are as follows:

Philip Ginther, the owner of the adjoining land through which a stream of water flowed from plaintiff's land, built a dam on his own premises in Rush township, Schuylkill county, for mill purposes, at considerable expenditure, whereby a part of plaintiff's land was overflowed by the backing of water. The plaintiff stood by while the defendant was erecting the dam, and made no objections. When it was completed and business commenced, he filed this bill, asking the court to decree the removal of the embankment, on the ground that it became a nuisance by the overflowing of the water upon his land.

As this case is heard upon bill and answer, the answer must be received as verity. Dohnert's appeal, 14 P. F. S. 315 ; Russell's ad., 10 Casey 258.

The first question that presents itself, is:

1. Can a court of equity, in such a case, interpose its power, and by

a decree compel the removal of an erection already completed ?    Or will it turn the party aggrieved over to the courts of law for redress ?

2. Is the plaintiff estopped by his act from proceeding to compel a removal of the erections complained of, after standing by and seeing valuable improvements perfected at a great expenditure, and business commenced ?

It is a fact in this case, that the works have been completed nearly two years, *and the injury (if any) has already been done.*  No doubt an action on the case may be maintained for damages against one who erects a dam on the adjacent ground, and backs water over the plaintiff's land, to his injury.   Ripka v. Sergeant, 7 W. & S. 9 ; Graver v. Sholl, 6 Wr. 58 ; Brown v. Bush, 9 Wr. 61.   And the plaintiff may not ·be estopped in an action on the case for *consequential damages.*   Woodward v. Webb, 15 P. F. Smith 254.

But this proceeding is not for consequential damages, but for the removal of the work itself.   Consequently such a decree would be like a judgment and execution before trial.   It would be more of a hardship to the defendant than a preliminary injunction, for that is a restrictive or prohibitory process, designed to compel the party against whom it is granted to maintain his status, merely until the matter in dispute shall be determined.   The *foundation* of such an order being the prevention of irreparable mischief or injury.   It can therefore only be resorted to from a pressing necessity to avoid injurious consequences, which cannot be repaired under any standard of compensation.   *It is therefore a preventive remedy only.*   The Mammoth Vein Coal Co.'s appeal, 4 P. F. Smith, 183 ; Commonwealth v. Rush, 2 Harris, 186.

Past injuries are in themselves no ground for an injunction.   The province of an injunction being to prevent future mischief.   Angell on Water Courses, 475, sec 444.

The granting of an injunction is always a high exercise of power to be cautiously exerted, but when large and expensive works are sought to be stopped, it should clearly appear that it is a case for equitable intervention, that there is no adequate remedy at law, and that irreparable injury will ensue.   The New Boston Coal & Mining Co. v. The Pottsville Water Co., 4 P. F. Smith, 164.

And if this is true with reference to granting injunctions, it is equally so when a final decree is asked.

2d.   The plaintiff having stood by and seen the defendant erect these improvements at a great expense without objection, the law raises an implied license to use them, which cannot be revoked after completion without compensation ; the plaintiff having his remedy in damages for a breach of the terms of the license.

The doctrine of estoppel "rests upon a belief induced by one, whereby another has been led to put himself in apposition when it would be a fraud in the former to shift it from him."   Meason v. Kaine, 17 P. F. Smith, 126.

"When a party stands by at a sale of his property, though under a void authority, and encourages purchasers to bid he is guilty of direct fraud.   Nass *v.* Van Swearingen, 10 S. & R. 146 ; Hill *v.* Epley et al., 7 Casey 334.

In like manner one who encourages another to settle on land, and expend money and labor on it, will not be permitted to assert a better title to it.   Miller *v.* Miller, 10 P. F. Smith 16.

Where one levied on land as belonging to a railroad company, he thereby affirms the company's title.   Robinson *v.* Atlantic & Great Western R. R. Co., 16 P. F. Smith, 160.

When the plaintiffs knew of the operations, the direction and extent of the works and made no objection, this would have been sufficient to have prevented the granting of an injunction, for the plaintiffs should have made known their objection and put the defendants on their guard against expending their money on what they meant should not be realized by them.   Mammoth Vein Coal Co., 4 P. F. Smith 183.

"Where it appears indisputably that the plaintiff sanctioned the structure of which he complains, he will be precluded from objecting to it whether it stands on his own land or that of the defendant."   The Ocean Co. *v.* Sprague Mining Co., 34 Conn. 524; Stephens *v.* Benson, 19 Ind. 368.

So also a license may become an agreement on a valuable consideration, as where the employment of it must be necessarily preceded by the expenditure of money, when improvements are made and capital invested it would be against all conscience to annul it as soon as the benefit is beginning to be perceived.   Rerick *v.* Kern, 14 S. & R. 267; See American Leading Cases, vol. 2, p. 584.

In Clement *v.* Durgin, 5 Greenleaf 9 ; McKellip *v.* McIlhenney, 4 Watts 317 and in Woodberry *v.* Pushley, 7 New Hamp. 237, it was held that the plaintiff was estopped from recovering damages for the overflow of his land· by a dam erected on that of the defendants, by proof that he had consented to the erection of the dam at the time it was built, which was said to preclude him from requiring that it should be taken down without refunding the expense of its erection."

The same doctrine obtains in Davis *v.* Marshall, 10 C. B. N. S. 697, where in the erection of a new house, the plaintiff had notice, and the defendant had expended large sums of money in making the change, with the knowledge and acquiesence of the plaintiff, and under a well founded belief that the latter would not object subsequently to what he did not forbid at the time.   In equity, a decree is not of right but of grace, and a chancellor will refuse to rejoin if it appear that he would do greater injury by enjoining than by leaving the party to his redress by a court and jury.   Richard's appeal, 7 P. F. Smith 105.   Besides, it ought not to be granted when the benefit is small and the injury slight.   Morris *v.* Pruddens, 20 N. J. Eq. 530; Higbee *v.* Camden R. R., 20 N. J. Eq. 435.

Nor when there is a remedy at law, the defendant being responsible. Brown *v.* Metrop. Gas Co., 38 How 133. A mandatory injunction, or one that commands the defendant to do some positive act, will not be ordered except upon a final hearing, and that only to execute the decree or judgment of the court, and will not be ordered on a preliminary or interlocutory motion. Rogers *v.* Erie R. R. Co., 20 N. J. Eq. 379.

For these reasons the bill is dismissed, each party to pay his own costs. Mr. *Seltzer*, for plaintiff; Mr. *Shindel* and *F. W. Ryon*, for defendant.