JOHN T. TRACY ET AL. *vs.* JOHN H. O'NEILL.

Third Judicial District, Bridgeport, October Term, 1925.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, Js.

The law does not require of one party to a contract the futile act of tendering performance to the other, when the other has definitely repudiated the agreement.

A promisor cannot escape his legal responsibility to the promisee by preventing, without legal excuse, the happening of the event upon which his obligation depends.

It is well settled that a broker in whose hands real estate has been placed for sale by its owner, is entitled to a commission when his efforts have resulted in procuring a customer who is ready, able and willing to buy upon the terms which were prescribed by the owner when he employed the broker. '

After the defendant's real estate had been listed for some time with the plaintiffs for sale, the parties entered into a written contract whereby the plaintiffs were given an option for one week to sell the property upon stated terms and for an agreed commission to be paid "on the signing of the contract." *Held* that this constituted a complete novation, and that the subsequent legal relations of the parties were to be determined solely from the written instrument.

On the day fixed for the expiration of the option, the plaintiffs produced a customer who, through her attorney, tendered to the defendant a bond for a deed which in all respects accorded with the terms of the option except that it contained an additional provision to the effect that all heating, plumbing and bathroom fixtures were included in the sale. The defendant objected to this provision and insisted, not only that it be stricken from the bond, but that it be replaced by a clause expressly excepting such fixtures from the operation of the deed. The parties were thereafter unable to reach an agreement and the bond was never executed, but before the conclusion of the conference, the customer's attorney made an offer to "take up the option on its terms," which was refused by the attorney for the defendant. The trial court concluded that, upon these facts, the plaintiffs had not earned their commission under the option contract. *Held* that the trial court erred, since the plaintiffs, by producing a customer who could and would "take up the option on its terms," had fulfilled all the conditions essential to their right to

compensation—a right which the defendant could not defeat by his unwarranted refusal to execute the bond.

Argued November 5th—decided December 23d, 1925.

ACTION to recover a commission alleged to have been earned by the plaintiffs in the sale of the defendant's real estate, brought to the Court of Common Pleas in Fairfield County and tried to the court, *Huxford, J.;* judgment rendered for the defendant, and appeal by the plaintiffs. *Error; judgment to be entered for plaintiffs.*

*Wilbur S. Wright,* for the appellants (plaintiffs).

*George E. Beers,* with whom, on the brief, was *William L. Tierney,* for the appellee (defendant).

HAINES, J. In the trial court the plaintiffs moved for corrections in and additions to the finding, but no appeal was taken from the action of that court thereon; the finding as amended therefore stands, and the answers to the two questions propounded by the plaintiffs' reasons of appeal must be made in the light of the facts thus found.

The plaintiffs, Tracy and Whelan, were, during and before the month of January, 1924, partners in the business of handling real estate in the town of Greenwich in this State, under the name of Realty Service Company. Some time prior to the month of January, 1924, the defendant, by telephone, listed his property known as No. 18 Greenwich Avenue, with the plaintiffs, for sale. After the property had thus been listed for some time, the plaintiff Whelan called upon the defendant at the latter's place of business in Port Chester to see if the defendant desired to treat the property as still listed with the plaintiffs for sale. The defendant informed the plaintiff Whelan that the property was still for sale, and that the price was $35,000. The plaintiff

Whelan then called upon a Mrs. Swanson concerning the purchase of the property by her, and at her suggestion, again, on the 16th of January, called upon the defendant, explained to him that he had a prospective customer for the property and requested a written option for six days. The defendant acceded to this request and a written agreement was signed as follows:

"Realty Service Company,
  33 Railroad Avenue,
    Greenwich, Connecticut.

Gentlemen: I hereby agree to sell my property situated at Number 18 Greenwich Avenue, Greenwich, Connecticut on the W/S of Greenwich Avenue, for the sum of $35,000. It is understood that the purchasers are to assume the mortgages of 1st. $10,000—2d. $5,000 and 3d. $2,000. I agree to accept a cash payment of $5,000, $2,500 to be paid on the signing of the contract and $2,500 to be paid on the deliverance of a warranty deed to the premises. I also agree to take back an additional mortgage of $13,000, said mortgage to run for a period of ten years from date of issuance and to bear interest at the rate of six per cent. Said mortgage is to be reduced at the rate of $500 yearly, more can be paid if desired. I also agree to pay you (Realty Service Company) five per cent. of the purchase price on the signing of the contract. In consideration of the sum of $5 (receipt acknowledged). This option will expire on January the 22d, 1924, at 2 o'clock p.m.

L. WHELAN                        J. H. O'NEILL"

On the same day this option was signed, the plaintiff Whelan and the prospective purchaser, Mrs. Swanson, visited and inspected the premises, and while there were informed by the tenant of the building that certain plumbing apparatus and fixtures in the building were

the property of the tenant and would be removed by the latter when and if they vacated the building. Afterward on the same day plaintiff Whelan visited an attorney and instructed him to prepare a contract of sale of the property which, among other provisions, was to contain the following: "It is understood and agreed that the plumbing and bathroom fixtures and all heating and plumbing apparatus, now used or attached to said property, are included in this sale." On the afternoon of that day and after the preparation of the contract of sale, the plaintiff Whelan arranged a meeting at the office of the attorney who had prepared the proposed contract of sale, at which meeting the plaintiff Whelan, the defendant, the plaintiff's attorney, the defendant's attorney, Mrs. Swanson and some of her friends, were present, and before the meeting was over Mrs. Swanson's attorney arrived. For the first time it was then disclosed to the defendant that Mrs. Swanson was the prospective purchaser. The proposed contract which had been prepared by the plaintiff Whelan's direction was produced, whereupon defendant's counsel objected to the inclusion of the above recited clause regarding plumbing apparatus and fixtures. This precipitated a discussion. The attorney for the defendant declared he would advise his client not to sign the contract with that clause in it, and that he wished a clause in its place expressly excluding those articles of property. No agreement resulted from this discussion, but before two o'clock, the hour fixed in the option for its expiration, counsel for Mrs. Swanson and acting in her behalf, notified defendant and his counsel that they would take the property under the option just as it read, saying, in effect, "we will take up the option on its terms." This offer was refused by the defendant through his counsel. Mrs. Swanson was able, ready and willing to purchase the property upon the terms laid

down in the option by the owner, and was ready and willing to accept a deed of the property drawn in exact accordance with the terms of that option. These are the controlling facts of the transaction as gleaned from the somewhat voluminous statements in the finding.

Upon this state of facts the plaintiffs contended in the trial court, and here contend upon this appeal, that they are entitled to the commission of five per cent. provided by the terms of the option; while the defendant insists that as the proposed contract of sale was never signed, the commission was not earned and never became due to the plaintiffs. The trial court took the view of the defendant and gave judgment accordingly.

In support of the judgment, counsel for the defendant, in brief and argument, say that the obligations of the parties are to be determined by the terms of the written contract, referred to at some points in the record as the option, and that whatever the mutual legal relations of plaintiffs and defendant had been while the property was merely listed by the latter with the former for sale, the signing of the written agreement was a complete novation. We agree with this view, and when we examine the paper to see what the legal relations thus created were, it becomes at once apparent that the defendant was bound to the plaintiffs to sell the property for $35,000 if at any time before two p.m. January 22d, 1924, the plaintiffs were able to produce a customer who could and would pay that sum and agree to the other conditions, which had to do with the payment only. There were no conditions or limitations as to the character or extent of the property. If the plaintiffs and the defendant had met before two p.m. January 22d, 1924, and made no reference to plumbing fixtures and apparatus, and the buyer was ready and able and then and there offered to take up the option, the defendant would have been under strict

legal obligation to comply on penalty of suit by the plaintiffs for breach of contract. It would be idle to claim that either party, when the written agreement or option was signed, intended to impose upon the defendant anything more or less than just this legal obligation.

The defendant says his legal responsibility is still to be measured by the terms of the option, and he stands squarely on that. But the proposals and counter-proposals of the parties as to certain plumbing apparatus did not alter their legal relation under the option, and until two p.m. January 22d, 1924, the defendant remained legally bound to sell the property on the terms stated therein. It appears from the finding that though the offer to take up the option was made before that hour, the defendant squarely refused to sell, for the sole reason that the purchaser would not consent to the addition of a provision concerning the plumbing apparatus, as to which nothing was said in the option. The record does not show that the defendant ever claimed that the clause he desired to have inserted in the contract of sale was within the terms of the option. It was quite clearly an afterthought. It was for this reason alone that the sale was not consummated or a contract of sale signed. What, then, are the legal relations of the parties under these circumstances? The plaintiffs fully performed every possible condition imposed upon them by the option. When the offer was made to take up the option "on its terms," they had accomplished exactly what the option required of them to earn the five per cent. commission. When he signed the option, the defendant had intended that such action on their part should entitle them to their commission. He did not intend, when he signed the option, to reserve the right to refuse to sign a contract of sale and defeat the claim of the plaintiffs. Such an attempt could not

meet the test of either morality or law. Nor can it be reasonably claimed that the provision as to the payment of a commission was intended by either party to be a condition precedent to the incurring of a liability by the defendant for that commission; it was to be paid when the contract was signed, not *if* it was signed. The first result, and we think it is the controlling one, was, that though the plaintiffs had met every condition imposed upon them by the option, the defendant failed and refused to perform his part of the contract. It appears from the finding that the offer, "we will take up the option on its terms," was "declined and refused" by the defendant's attorney "acting for the defendant" who "wished to have a clause inserted expressly excluding those things from the sale." It is too obvious for discussion that this condition was outside the terms of the option. It follows as a legal result that when the defendant refused to carry out his written agreement in terms, there remained to the opposing parties no obligation to make tender of the consideration, offer a written contract or form of deed, or do any further act. The law does not require an act which would be a mere futility. *Torkomian* v. *Russell,* 90 Conn. 481, 484, 97 Atl. 760; *Trowbridge* v. *Jefferson Auto Co.,* 92 Conn. 569, 573, 103 Atl. 543; *Soldate* v. *McNamara,* 94 Conn. 589, 591, 109 Atl. 724.

The "signing of the contract" was prevented by the unwarranted act of the defendant himself; and on familiar principles of law, if a promisor, without legal excuse, prevents the happening of an event upon which his liability depends, he cannot thus be allowed to defeat the promisee. *Fitzpatrick* v. *Gilson,* 176 Mass. 477, 479, 57 N. E. 1000; *Gallagher* v. *Nichols,* 60 N. Y. 438; *Patterson* v. *Meyerhofer,* 204 N. Y. 96, 97 N. E. 472; *Middleton* v. *Thompson,* 163 Pa. St. 112, 29 Atl. 796; *Fischer* v. *Bell,* 91 Ind. 243; *Peet* v. *Sher-*

*wood,* 43 Minn. 447, 45 N. W. 849; *Cheatham* v. *Yarbrough,* 90 Tenn. 77, 15 S. W. 1076; *United States* v. *Peck,* 102 U. S. 64; *United States* v. *United Engineering & Contracting Co.,* 234 U. S. 236, 34 Sup. Ct. 843.

In the case of *Home Banking & Realty Co.* v. *Baum,* 85 Conn. 383, 82 Atl. 970, the plaintiff, acting as a real-estate dealer, received a writing from the defendant, who desired to sell his house and lot, the operative portion of which was as follows: "I hereby authorize the Home Banking & Realty Co. to sell my property as per schedule on reverse side of this card, and do hereby agree to pay a commission of 2% on the sale price, if sold or exchanged at price satisfactory to me." The price stated on the reverse side was $5,800. The plaintiff found a party who was willing to pay $5,600, and the offer to do so was accepted by the defendant, who agreed to sign a deed of transfer that evening. After some delay the defendant refused to sign the deed unless the price was raised to $5,800, as provided in the written agreement. The plaintiff's demand for the commission provided in the written agreement was met by the defendant's claim that the plaintiff could not recover a commission because the property had not been actually conveyed. The conclusions we reached in that case are our conclusions in this case. We there held that the broker had done all that the written agreement required of it, but its work was rendered fruitless by the refusal of the defendant to sign the deed, and the latter should therefore not be allowed to say that the plaintiffs' contract had not been performed.

There is error, the judgment is set aside, and the Court of Common Pleas directed to render judgment for the plaintiffs to recover $1,750, with interest from January 22d, 1924.

In this opinion the other judges concurred.