PRISCILLA VESCE *v.* JAMES D. LEE ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, ARMENTANO and BIELUCH, Js.

Argued May 4—decision released August 18, 1981

*Thomas B. Wilson,* for the appellant-appellee (plaintiff).

*Theodore A. Harris,* with whom was *Nance K. Castillo,* for the appellee-appellant (named defendant).

ARMENTANO, J.  On December 17, 1974, the plaintiff, Priscilla Vesce, and the defendant,[1] James D. Lee, acquired title as tenants in common to real estate located in the town of Montville.  The purchase price was $108,000.  They each contributed one-half of the $10,000 down payment.  The assumption of a first mortgage and the execution of a purchase money second mortgage made up the remainder of the purchase price.  Property owned by the plaintiff in Oakdale and property owned by the defendant in Old Lyme further secured the purchase money mortgage.  Although not married, the plaintiff and the defendant acquired the property as a family residence for themselves, the plaintiff's two children, and the defendant's mother.  They moved into their residence in November, 1974, one month prior to the closing.  At this time, the plaintiff, a widow, received approximately $900 a month from a veteran's administration pension, social security benefits and rental income.  The plaintiff paid this amount to the defendant who placed it into a common fund from which he paid the cost of mortgage payments, improvements, and other household and living expenses.  The plaintiff's monthly contribution was later reduced to $800 when her oldest daughter left the home.  The plaintiff also paid to the defendant a lump sum $10,200 which she inherited from her father's estate.  Although the defendant denies the payment of this lump sum, he admits that a $4000 loan to him has not been repaid.

In March, 1977, the plaintiff and defendant had a falling out and agreed to separate.  The plaintiff and her child vacated the premises.  The defendant

[1] The only defendant on appeal is James D. Lee.  All references to the defendant are to him.

continued to occupy the premises until February, 1979, without the benefit of the plaintiff's contributions and without making any rent payments to her. After the separation he paid all the expenses of maintaining the real estate in addition to spending $1250 to pave the driveway, $1450 to refinish the kitchen and $25,978.24 in mortgage payments. On November 5, 1977, the parties entered into an agreement[2] which purported to transfer the plaintiff's interest in the real estate to the defendant in exchange for $13,830. The plaintiff's interest in the real estate never passed to the defendant pursuant to this agreement. In June, 1978, the plaintiff commenced this action seeking (1) a partition by sale

---

[2] The signed agreement, witnessed and notarized, provided:

"November 5, 1977

"I, Priscilla Vesce of Beach Lane, P.O. Box 41, Oakdale, hereby agree with James Lee to the following conditions which originated in the purchase of property and for the money and effort for which we have both put into this property to bring it to a termination.

"1. I will give James Lee the house on Oxoboxo Lake previously owned by Mrs. Berk.

"2. I will give to James Lee the lot in East Lyme, CT which is secured on a note.

"3. I will replace his vacuum cleaner.

"I, James Lee of Oakland Drive, Oakdale, hereby agree to remove Priscilla Vesce Lee's name from the property formerly known as the Berk property.

"1. I agree to pay her back $13,830 in cash, with $10,000 to be paid now and the balance within one year from the date of signing this agreement.

"2. I agree to give back her house on Chesterfield Road, Oakdale in 'as is' condition to her without paying off her first mortgage but exacting as it was in the past.

"We, Priscilla Vesce and James Lee are hereby entered into this agreement together, and upon the signing and completion of this agreement, each of us will be independent from one another. Each of us will not take personal property or violate the rights of one another. Our liabilities from one another will be and must be completely separate.

"We each release each other from all obligations and have no further rights to place any restrictions on each other from this day on."

of the real estate; (2) an allocation to her of the proceeds from the sale according to her interest; (3) an accounting; (4) a judgment against the defendant's share on the sale of the property; and (5) other relief. The defendant raised as a special defense the November 5, 1977 agreement.

While this action was pending, the parties sold the real estate in October, 1979, for $147,000. After the payment of the two encumbrances, the sum of $75,550.92 was available for distribution to the parties. From that sum, the parties agreed to distribute $20,290.90 to each of them so that the defendant could pay a mortgage note signed by him. The remaining balance of $34,969.12 is being held in escrow by the parties' attorneys. The trial court's distribution of this amount is the gravamen of this appeal.

In order to determine each party's share, the trial court divided the time in which they owned the real estate into three periods. It held that all sums of money contributed by the parties from the date of the purchase of the real estate to the date of separation, with the exception of the plaintiff's $4000 loan to the defendant, "were made for the joint benefit of both without expectation of reimbursement from the contributing parties." Neither party claims error in this conclusion. From the date of separation to the date on which the parties signed their agreement, the trial court held "that the mortgage payments and payment of real estate taxes made by the defendant . . . were considered payment by the defendant for his use and occupancy [of the real estate]." Finally, the court held that all payments by the defendant for the mortgage, to refinish the kitchen and to pave the drive-

way subsequent to the signing of the agreement and until the sale of the real estate "were made only for the benefit of the defendant" and therefore operated as a credit to him.

During this last period of time, the defendant's payments amounted to $28,678.24 of which the trial court credited one-half ($14,339.12) to his account. The plaintiff was credited $4000 which represented the repayment of her loan to the defendant. The trial court subtracted the sum of the plaintiff's and defendant's credits from the money being held in escrow to obtain a net amount of $16,630. The court then awarded one-half of this amount ($8315) to each of the parties together with their respective credits. The final amount calculated due was $12,315 to the plaintiff ($8315 plus her credit of $4000) and $22,654.12 to the defendant ($8315 plus his credit of $14,339.12).[3] From this decision both parties have appealed.

---

[3] A summary of the credits and distribution as contained in the memorandum of decision is reproduced:

*"Credited to the plaintiff:*
Repayment of loan.......................... $ 4,000.00
*Credited to the defendant:*
One-half of mortgage
payments made to the
Connecticut Bank and
Trust Company from
November 5, 1977 to date
of sale — 22 payments at
$164.92= $3,628.24.
One-half of $3,628.24....................... 1,814.12
One-half of monthly mort-
gage payments made to Mrs.
Berke — 22 payments at
$425.00= $9,350.00. One-
half of $9,350.00........................... 4,675.00
One-half of $13,000.00
mortgage payment made
to Mrs. Berke.............................. $ 6,500.00

The plaintiff claims error in the trial court's decision to give the defendant credit for one-half of the mortgage payments and of the cost for refinishing the kitchen and paving the driveway. She argues that the available proceeds from the sale of the real estate should be equally divided. In the defendant's cross appeal, he claims that the trial court should have awarded him full credit for the mortgage payments made between the date of separation and the date of the sale of the real estate as well as for the cost of repairs to the kitchen and driveway. He also claims error in the court's failure to find that the plaintiff had breached the agreement to transfer her interest in the real estate to him and that the agreement was dispositive of the parties' rights.

We initially note that there is no challenge to the trial court's finding pertaining to the plaintiff's loan to the defendant of $4000 and the subsequent credit of this amount to her account.

| | | |
|---|---|---|
| One-half of cost of re-finishing kitchen .......................... | | 725.00 |
| One-half of cost of paving driveway .......................... | | 625.00 |
| | | $14,339.12 |
| Amount held in escrow...................... | | $34,969.12 |
| Amount to be credited to plaintiff............... | $ 4,000.00 | |
| Amount to be credited to defendant............... | 14,339.12 | 18,229.12 |
| | | $16,630.00 |
| One-half of balance in escrow account to be credited to each party................... | $ 8,315.00 | |
| Total amount due to plaintiff................. | | $12,315.00 |
| Total amount due to defendant............... | | $22,654.12" |

We first will deal with the claimed error involving the enforceability of the agreement. By its terms, the $13,830 purchase price for the plaintiff's interest in the real estate was to be paid by the defendant "in cash with $10,000 to be paid now and the balance within one year from the date of signing [the] agreement." The plaintiff testified that during the seven month period beginning with the signing of the agreement in November, 1977, and ending with the commencement of this action in June, 1978, the defendant never paid, offered to pay or tendered payment of the $10,000. This testimony became part of the trial court's findings of fact and the factual basis for its conclusion that the defendant breached the agreement. It also formed the basis for the court's conclusion that the breach "entitled the [plaintiff] to regard the contract as discharged and to put an end to it." *O'Keefe* v. *Bassett,* 132 Conn. 659, 663, 46 A.2d 847 (1946); *Dadio* v. *Dadio,* 123 Conn. 88, 91–92, 192 A.2d 557 (1937); 2 Restatement (First), Contracts § 397; Restatement (Second), Contracts §§ 262, 266 and 267 (Tent. Draft No. 8, 1973); 12 Williston, Contracts (3d Ed. Jaeger) § 1465.

The defendant's testimony was contradictory. He testified that he offered to perform his obligations under the agreement within two weeks after its execution but that the plaintiff refused. His claim is that the anticipatory repudiation by the plaintiff put her in breach and excused the defendant from making an actual tender of the $10,000. See *Vachon* v. *Tomascak,* 155 Conn. 52, 57, 230 A.2d 5 (1967); *Tracy* v. *O'Neill,* 103 Conn. 693, 699, 131 A. 417 (1925). The defendant argues that since it was the plaintiff who repudiated and breached the agree-

ment, the defendant is entitled to all the proceeds from the sale of the real estate remaining after payment of the agreed upon $13,830 purchase price. The plaintiff's testimony as to tenders and offers of payment is directly opposite that of the defendant. They were the only two witnesses who testified at the trial.

The defendant's claim has merit only if his testimony is believed and the plaintiff's version of the facts is disbelieved. The trial court, however, chose to believe the plaintiff and not the defendant. It is peculiarly within the province of the trier of fact to judge the credibility of a witness. *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 547, 391 A.2d 170 (1978). "It is the trial court which had an opportunity to observe the demeanor of the witnesses and parties; thus, it is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." *Kukanskis* v. *Jasut,* 169 Conn. 29, 32–33, 362 A.2d 898 (1975). This court cannot retry the facts or pass on the credibility of the witnesses. *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975). We find no reason to disturb the trial court's adoption of the plaintiff's version of the facts instead of the defendant's recollection of the events.

Since the legal conclusions of the trial court are legally and logically correct and supported by the facts in the memorandum of decision and since the facts in the memorandum of decision are supported by the evidence and are not clearly erroneous in light of the evidence and the pleadings in the whole record, we reject the defendant's claim of error. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

Because of our disposition of this issue, it is not necessary to decide whether the agreement between the parties was so vague and indefinite as to be unenforceable under the statute of frauds. See *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* supra 541–42; General Statutes § 52-550.

We next decide the issue of the division of the proceeds between the parties. We hold that (1) the balance of the proceeds from the sale of the real estate being held in escrow should be distributed between them in equal shares, and (2) the defendant should repay to the plaintiff her $4000 loan to him from his allocation of the funds in escrow.

The trial court found that during the time period when the plaintiff and her children, and the defendant and his mother, lived together as a family, contributions of money to defray the costs of owning the real estate "were made for the joint benefit of both without expectation of reimbursement from the contributing parties." Neither party has disputed this finding. When such a finding is made, especially if the parties have been living together as though they were husband and wife, there is a presumption that when one party vacates the commonly owned family residence, future expenditures will continue to be made for the joint benefit of the cotenants. In other words, the single fact that the plaintiff vacated the family home, leaving the defendant in possession, was not sufficient to rebut the presumption that the parties intended that all expenditures made after the separation, even if only made by one of them, would continue to accrue for the benefit of both parties without any future accounting or contribution. *Seidel* v. *Seidel,* 110 Conn. 651, 656, 149 A.2d 394 (1930) ; see *Neumann* v.

*Neumann,* 134 Conn. 176, 178–79, 55 A.2d 916 (1947) ; *Brady* v. *Brady,* 86 Conn. 199, 207–208, 84 A. 925 (1912) ; *Kelley* v. *Madden,* 40 Conn. 274, 279–80 (1873) ; *Baldwin* v. *Breed,* 16 Conn. 60, 67 (1843).

What this court said in *Seidel* v. *Seidel,* supra, 657–58, is appropriate to this case : "We turn to the facts in the record before us, searching to see whether they do show that [the defendant] made these expenditures for improvement, repairs, interest and taxes on the [real estate] owned in common by himself and [the plaintiff] with the intention of subsequently claiming credit for them against [the plaintiff] . . . . There was no agreement or understanding on the part of the [plaintiff] that she should make these improvements or pay for a half of the expenditures of [the defendant] on this [real estate]. The [defendant], when he made them, did not expect payment for these from her. Not until this action . . . did he make such claim, although [he knew of her new address]. He has had the entire [use of the real estate] for the support of himself and [his mother], and [the plaintiff], since she left him, has had no support from him and no benefit from the [real estate] . . . . There are no facts found which tend to rebut the presumption which exists in their absence, that the [defendant] intended [the plaintiff] to have such benefit as these expenditures were to her one half of the [real estate] without accounting to, or making contribution to him, for a half or any part of them."

We note that in the appeal before us, not only was there no agreement that the absent plaintiff would contribute to the expenses incurred by the defendant, but also, when the parties did enter into the

agreement to sell the plaintiff's interest to the defendant, no mention was made that the expenditures by the defendant would be shared by the plaintiff. If the defendant had such an intention, he would have made it a part of the agreement.

For the reasons stated in this opinion, we conclude that the trial court's distribution of the proceeds from the sale of the real estate was in error. The judgment is set aside and the case is remanded with direction to award to the plaintiff four thousand dollars from the proceeds being held in escrow as repayment of her loan to the defendant and then to distribute the remaining monies being held in escrow in equal shares to each of the parties. The distribution to the plaintiff is $21,484.56, being one-half of the amount in escrow or $17,484.56, plus the $4000 repayment by the defendant of the loan to him. The distribution to the defendant is $13,484.56, being one-half of the amount in escrow or $17,484.56, less the $4000 repayment to the plaintiff of the $4000 loan received from her.

In this opinion PETERS, HEALEY and BIELUCH, Js., concurred.

BOGDANSKI, C. J. (dissenting). The presumption that the parties intended that all expenditures made after the separation would continue to accrue for the benefit of both parties without any future accounting is rebuttable. Here, the court found that the parties intended that money spent by the defendant subsequent to November 5, 1977, would be solely for his benefit.

Since this conclusion is not "clearly erroneous"; Practice Book § 3060D; the trial court cannot be

reversed on this point. There is evidence, in the November 5, 1977 contract, to support the trial court's conclusion. This is not a case where the trial court had before it the single fact that the plaintiff vacated the family home. We have, in addition, a signed writing formally stating that the parties intended that they would henceforth be independent from one another. The agreement states, in part: "[U]pon the signing and completion of this agreement, each of us will be independent from one another . . . . Our liabilities from one another will be and must be completely separate." Even though the defendant later breached the contract, it is still operative to show the intent of the parties on November 5, 1977.

I therefore dissent.