[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Frank's Supermarket, appeals[1] a decision of the Commission on Human Rights and Opportunities ("CHRO"), finding that the plaintiff had unlawfully discriminated against the defendant, Donald Michaud, and awarding him damages including back pay in the amount of $36,473.54 and front pay in the amount of $45,276.40. Specifically, the CHRO found that the plaintiff discriminated against Michaud by terminating him as produce manager because of his age, a discriminatory practice prohibited by General Statutes § 46a-60 (a)(1). The plaintiff appeals pursuant to General Statutes §§ 46a-82, 46a-94a and 4-183. CT Page 3723
On appeal, the plaintiff argues:
1. The hearing officer abused his discretion in awarding front pay. The plaintiff acknowledges that the hearing officer may find that it is appropriate to award front pay after determining that reinstatement would cause the displacement or bumping of innocent incumbent employees and that there are no positions available that are commensurate with the plaintiff's just expectations. The plaintiff contends, however, that the hearing officer made no such determinations in this case;
2. There is no substantial evidence in the record to support the hearing officer's conclusion that reinstatement would be impracticable or inadequate because of animosity by the plaintiff toward the defendant;
3. Michaud failed to prove that a discriminatory motive based on age was a factor that made a difference in the plaintiff's decision to fire him. Although the hearing officer found that the plaintiff had "failed . . . to produce evidence that it had articulated any legitimate reasons for the firing at the time of the firing," the plaintiff claims that it had articulated several legitimate reasons for the defendant's terminations and that the hearing officer's findings were arbitrary and capricious.
4. The defendant Michaud failed to present substantial evidence of elements that would provide indirect proof leading to a reasonable conclusion of discrimination. The plaintiff contends that the defendant presented no evidence at the hearing that he was replaced with a younger, less qualified worker, that similarly situated older and younger employees were treated differently or that the defendant had a long history of superior performance.
The defendants have filed a cross appeal in which they seek an award of prejudgment interest. CHRO also seeks an order compelling the enforcement of the hearing officer's decision.
The following facts are relevant to the resolution of the issues on appeal:
Donald Michaud filed a complaint with the Connecticut Commission on Human Rights and Opportunities on September 26, 1991, claiming that Frank's Supermarket had fired him as produce CT Page 3724 manager of its West Hartford store in violation of General Statutes § 46a-60, et seq. More specifically, Michaud alleged that Frank's firing of him constituted individual disparate treatment in violation of General Statutes § 46a-60 (1) and the Age Discrimination Act of 1967, as amended, 29 U.S.C. § 631,et seq. Frank's denied the allegations, claiming that Michaud was fired for legitimate cause. The complaint was assigned to a CHRO investigator, who determined that there was probable cause for certification of the complaint to public hearing in accordance with the General Statutes and the CHRO Regulations.
From April to October of 1993, a duly appointed hearing officer of the Commission, John Stafstrom, conducted six days of public hearings. In a written decision dated February 27, 1995, the hearing officer found that the plaintiff had discriminated against Michaud on the basis of his age when it fired him as produce manager of its West Hartford store. He awarded back pay and front pay.
On April 4, 1995, the plaintiff appealed the decision of the hearing officer to the Superior Court. The Defendants answered the plaintiff's complaint and filed individual counterclaims claiming that prejudgment interest should have been granted by the hearing officer on the back pay award. The Commission on Human Rights and Opportunities filed a second counterclaim seeking a court decree enforcing the hearing officer's decision.
The hearing officer found that Michaud was hired by Frank's on April 27, 1972 as a produce manager. He was transferred to Frank's West Hartford store in 1982 and became produce manager there. In approximately 1985 or 1986, Paul Torna, the son of Frank's founder and namesake, Frank Torna, began to take more responsibility in running the business, and in 1986, Paul Torna became vice president. In 1988 or 1989, Michaud was given the duties of closing Frank's West Hartford store several times a week, a position that involved more hours and higher pay, in addition to his duties as produce manager.
Michaud was discharged by Frank's on August 17, 1991 and was replaced as produce manager by Tim Cummisky, age 23. Michaud was then 49 years old. At the time of his firing, the West Hartford store employed the following other managers: (a) meat department manager, Nick Grasso, age 27; (b) bakery department manager, Tom Ashley, age 26; (c) deli department acting manager, Connie CT Page 3725 Baxter, age 63; (d) assistant store manager, Chris Negri, age 27; (e) frozen foods and dairy acting manager, Rui Ramos, age 19; and (f) store manager, Sam Casserino, age 51. At the time of his firing, Michaud's salary was $625 a week, plus $225 for each Sunday he closed, which was generally 17 to 18 times a year. On October 21, 1991, about two months after he was fired, he obtained a position as a produce manager at Tri-Town Foods at a weekly salary of $500.
At the hearing, the plaintiff claimed that it fired Michaud because: (a) he failed to offer good customer service, keep the department clean, and properly rotate produce; (b) he failed to introduce new products and display produce in the way that had been done in plaintiff's Glastonbury store; and (c) the financial performance of the produce department under Michaud was poor. The hearing officer, however, determined that the evidence established that Michaud was discriminated against in violation of § 46a-61 (1) of the General Statutes.
This court's review of the CHRO decision is governed by the Uniform Administrative Procedures Act, which limits the scope of judicial review of administrative agency decisions, Miko v. TheCommission on Human Rights and Opportunities, 220 Conn. 192,200-201, citing Connecticut Light and Power Co. v. Department ofPublic Utility Control, 219 Conn. 51, 57-58, 591 A.2d 1231 (1991) and Connecticut Building Wrecking Company v. Carothers, 218 Conn. 580,593, 590 A.2d 447 (1991). The Uniform Administrative Procedures Act ("UAPA") states the standard of review in General Statutes § 4-183 (i).[2] The scope of review under the Uniform Administrative Procedure Act "is very restricted." Boardof Education v. Freedom of Information Commission, 208 Conn. 442,452 (1988); Pet v. Department of Health Services, 228 Conn. 651,660 (1994). "[T]he Superior Court may not try the case de novo, adjudicate facts or substitute its own discretion for that of the the [hearing officer]." Billings v. CHRO, 18 Conn. App. 241, 243
(1989); Greater Bridgeport Transit District v. State Board ofLabor Relations, 232 Conn. 57, 64 (1995); Miko v. CHRO,220 Conn. at 201-202 (where the Supreme Court found that the trial court "did not defer to the substantial evidence in the administrative record, but, rather, improperly substituted its own judgment for that of the hearing officer on issues of fact."); Lieberman v.State Board of Labor Relations, 216 Conn. 253, 262 (1990). The CHRO's factual determinations are to be accorded considerable weight. CT Hospital Assn., Inc. v. Comm. on Hospitals and HealthCare, 200 Conn. 133, 140 (1986). If supported by substantial CT Page 3726 weight, they are conclusive and "cannot be disturbed." L. SuzioConstruction Co. v. State board of Labor Relations, 148 Conn. 135,138 (1961). The decision of the agency must be upheld if the record discloses evidence that supports any one of the reasons the agency gave for its decision. Laufer v. Conservation Comm.,24 Conn. App. 708, 714 (1991).
"[J]udicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's finding of basic fact and whether the conclusions drawn from these facts are reasonable." Adriani v. CHRO., 220 Conn. 307,314-15 (1991). "Substantial evidence" has been defined to mean evidence which affords a
 "substantial basis of fact from which the fact in issue can be reasonably inferred." . . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule. . . . In determining whether an administrative finding is supported by `substantial evidence', a court must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part.
CT Building Wrecking Co. v. Carothers, 218 Conn. 580, 593
(1991). See also, Miko, 220 Conn. at 217-18; ("Ultimately, the question is not whether the trial court would have reached the same conclusion but whether the record before the [hearing officer] supports the action taken."), quoting Williams v. LiquorControl Commission, 175 Conn. 409, 414 (1978).
The issue is not whether the CHRO could have made a different finding, based on this evidence, or whether the Court agrees with the ultimate result reached by the agency. Huck v. InlandWetlands Watercourses Agency, 203 Conn. 525, 541-42 (1987). This court does not engage in de novo review of the CHRO's determinations. Adriani v. CHRO, 228 Conn. at 551; Miko220 Conn. at 201; Board of Education v. CHRO, 176 Conn. 533, 538-39 (1979). Instead, it is obliged to accept as the facts as found by the agency: "This court cannot retry the facts or pass on the credibility of witnesses." Vesce v. Lee, 185 Conn. 328, 335
(1981). The plaintiff has the burden of proving that the agency, CT Page 3727 on the evidence before it, acted contrary to law and in abuse of its discretion. Demma v. Comm. of Motor Vehicles, 165 Conn. 15,16 (1973).
At the CHRO hearing, "[t]he plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity . . . The plaintiff then must satisfy her burden of persuading the fact-finder that she was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) Erisoty v.Merrow Machine Co., 34 Conn. App. 708, 710-11, 643 A.2d 898
(1994). See Ford v. Blue Cross Blue Shield of Conn., 216 Conn. 40,578 A.2d 1054 (1990), McDonnell Douglas Corporation v. Green,411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
As part of his prima facie case under § 46a-60 of the General Statutes a complainant must establish that he was qualified for the position he held. McDonnell Douglas Corp. v.Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) andTexas Department of Community Affairs v. Burdine, 450 U.S. 248,101 S.Ct 1089, 67 L.Ed.2d 207 (1981). In order to establish that the complainant was qualified for the position he held, it must be shown that he was doing the job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative. Loeb v. Textron, Inc., 600 F.2d 1003 at 1013 (1st Cir. 1979). See International Brotherhood of Teamstersv. United States, 431 U.S. 324, at 358 n. 44 (1977). Stated another way, a complainant must prove that he performed his duties in a manner which met the respondent employer's "legitimate expectations." Loeb v. Textron, Inc., 600 F.2d 1003
at 1014 (1st Cir. 1979).
An employer may defend a charge that he has dismissed an individual because of the individual's age on the ground that the CT Page 3728 discharge was based on factors other than age, or that the discharge was for good cause. Marshal v. Westinghouse ElectricCorp., 576 F.2d 588, 590-592 (5th Cir.), rehearing denied,582 F.2d 966 (5th Cir. 1978). Thus, an employer may rightfully discharge an employee, even if the employee is a member of the protected class, if the employee's work has become unsatisfactory. Cowlishaw v. Armstrong Rubber Co., 450 F. Sup. 148,153 (E.D.N.Y. 1978).
The plaintiff claimed at the hearing that it had reasons for the discharge that were not discriminatory. The hearing officer considered the testimony offered in support of those reasons, and found the testimony not worthy of belief. Indeed, he concluded that Paul Torna manufactured these reasons for purposes of the hearing and that this fabrication was in itself evidence of the age discrimination claimed by Michaud. Sudden allegations of poor performance following a long history of prior strong performance and discrepancies in the employer's reasons for the termination can be sufficient to establish age discrimination. Archambault v.United Computing Systems. Inc., 786 F.2d 1507, 1572 (11th Cir. 1986). Upon reviewing the record, this court cannot conclude that the hearing officer's determinations in this regard were arbitrary and capricious.
It is of course true that an employer is entitled to make his own policy and business judgments and may discharge even an adequate employee if his reason is to hire a new employee who will be even more qualified so long as such reason is not a pretext for discrimination. Loeb v. Textron. Inc., 600 F.2d 1003,1012 n. 6 (1st Cir. 1979). The law fully recognizes the employer's business necessity to make its employment judgments free from restraint, especially when a management level job is involved, Id. at 1019, provided only that its actions are made in good faith and do not violate any statutory stricture. Kenwood v.Mortgage Bankers Association of America Inc., 494 F. Sup. 1298,1309 (D.D.C. 1980). The focus is on the employer's motivation, and not on its business judgment. The employer even has the "prerogative to be shortsighted and narrow-minded . . ." Drownv. Portsmouth School District, 435 F.2d 1182, 1186 (1st Cir. 1979), cert. denied, 402 U.S. 972 (1971).
In this case, however, the hearing officer had a sound factual basis, grounded in evidence, for his conclusions that the employer's actions were discriminatory. This is not to say that it would have been impossible for him to have concluded CT Page 3729 otherwise, but only that it was not unreasonable, and certainly not arbitrary and capricious, for him to have reached the conclusions that he reached.
Although it is true that Tim Cummisky, the person who replaced Michaud as produce manager, was 23 years old, a year older than Michaud was when he became a produce manager, this does not mean that Michaud had not proved that Cummisky was less qualified. The very fact that Michaud had some 25 years of experience was in itself evidence upon which the hearing officer was free to rely as tending to show that Michaud's qualifications were superior to those of Cummisky.
The hearing officer also found that similarly situated older and younger employees were treated differently. Sischo-Nownejadv. Merced Community College Dist., 934 F.2d 1104 (9th Cir. 1991),Tennes v. Massachusetts Dept. of Revenue, 944 F.2d 372 (7th Cir. 1991), Rosenfeld v. Wellington Leisure Products Inc., 827 F.2d 1493
(11th Cir. 1987). Although neither Chris Negri, Nick Grasso, Tom Ashley nor Rui Ramos were produce managers, as department managers, they were similarly situated to Michaud.
Another form of indirect proof of discrimination offered by Michaud was that he had had a long history of superior performance, and that his performance had been praised shortly before the termination. Ridenour v. Montgomery Ward Co.,786 F.2d 867, 868 (1986). Despite plaintiff's claims, to the contrary the hearing officer had evidence to support such a conclusion.
Plaintiff had asserted at the hearing that among its "legitimate business reasons" for firing Mr. Michaud were his refusal to follow plaintiff's directives regarding the displaying of produce and his failure to introduce a new marketing plan, the "Glastonbury Look", but the hearing officer found that plaintiff and Michaud had never even discussed any changes in the way the produce department was run. The hearing officer emphasized this point as a basis for his conclusion that plaintiff's claim that it fired Michaud for failing to follow its direction was a pretext for age discrimination.
The hearing officer also found that gross sales, gross percentage profit, and percentage of total store sales in Michaud's department during the period in question were statistically the same as during prior years, during which the plaintiff had had no complaints about Michaud. The hearing CT Page 3730 officer also found that the financial performance of the produce department in the period prior to termination was superior to that of the other departments.
The hearing officer rejected as irrelevant evidence based on plaintiff's comparison of Michaud's performance with the performance of his successors. The hearing officer correctly concluded that the only relevant evidence was that information of which the plaintiff was aware in August 1991 when it fired Michaud. Kristufek v. Huffman Foodservice Co., 985 F.2d 364 (7th Cir. 1991).[3] He found no evidence to rebut Michaud's claim of the sound financial performance of the produce department during his tenure, and he concluded that this stated reason for the firing was pretextual.
The hearing officer thus found that Michaud met his initial burden of proving a prima facie case of discrimination. He had a reasonable basis for his conclusion that Michaud was treated differently from younger but similarly situated employees and that this treatment constituted evidence of discrimination based on age. Shager v. Upjohn Co., 913 F.2d 398, (7th Cir. 1990);Rosenfield v. Wellington Leisure Products, 827 F.2d 1493, (11th Cir. 1987); Sischo-Nownejad v. Merced Community College Dist.,934 F.2d 1104 (9th Cir. 1991); and Tennes v. Massachusetts Dept.of Revenue, 944 F.2d 372 (7th Cir. 1991). He found that although other department managers had performance problems, the younger managers were retained while all the older managers were laid off or demoted. Specifically, the hearing officer found that: Mr. Michaud, produce manager, age 48, was fired and replaced by a 23-year-old; Mike Christmas, assistant produce manager, age 40, was fired and replaced by a 20-year-old; Sam Cassarino, store manager, age 51, was demoted and replaced by a 34-year-old; Connie Baxter, acting deli manager, age 63, was demoted and replaced by a 20-year-old; Chris Negri, assistant store and grocery manager, age 27, was only placed on probation, so that unlike the older employees, he was given an opportunity to improve performance. The bakery, meat and dairy/frozen managers, aged 26, 27 and 19 respectively, were not fired, despite questions about their performance. These factual determinations were not arbitrary and capricious, and the hearing officer was entitled to consider them as a basis for his finding of age discrimination.
Front Pay:
CT Page 3731
The Supreme Court has recognized that front pay and other prospective relief may be proper for a violation of CFEPA. Statev. Commission on Human Rights and Opportunities, 211 Conn. 464,478 (1989); accord., Civil Service Comm. v. CHRO, supra,195 Conn. 230 (C.G.S. Sec. 46a-86a authorizes retroactive and prospective monetary relief). Silhouette Optical Limited v. CHRO
ex rel. Russo, 10 Conn. L. Rptr. 599 (January 27, 1994). Plaintiff does not contest generally the legal authority of the hearing officer to award front pay, nor does it argue that the award is speculative or that the hearing officer erred in any way in calculating front pay. The defendants likewise do not disagree with plaintiff's assertions that there was no testimony by any party that there were no positions available commensurate with Donald Michaud's just expectations or that anyone would have to be bumped to accommodate Donald Michaud's reinstatement. Rather, the plaintiff's attack on the front pay award is based on the hearing officer's factual conclusion that because of the plaintiff's animosity toward Michaud, reinstatement in his former position would have been impracticable. To prevail, the plaintiff must show that this conclusion was arbitrary and capricious and not supported by the evidence.
Front pay in Connecticut is limited to cases where the hearing officer determines in his discretion that it (1) is an appropriate remedy; (2) is in lieu of reinstatement; (3) is not too speculative; and (4) is for temporary relief only. Reinstatement remains the preferred remedy, and front pay is appropriate only where reinstatement is impracticable or inadequate. The courts in other states have held that an employee who has suffered discrimination in his or her employment in violation of a state statute may seek an award of front pay only where reinstatement is unavailable as a remedy, Civil Rights Div.of Arizona Dept. of Law v. Superior Court of County of Pima,146 Ariz. 419, 706 P.2d 745 (1985); Riethmiller v. Blue Cross BlueShield, 151 Mich. App. 188, 390 N.W.2d 227 (1986); BeehiveMedical Electronics, Inc. v. Industrial Com., 583 P.2d 53 (1978). The court in Blim v. Western Electric Co., 731 F.2d 1473 (10th Cir. 1984) held that the mere fact of the employee's preference for damages does not justify awarding front pay rather than reinstatement.
There was substantial evidence upon which to find the existence of animosity between Michaud and Paul Torna. Michaud himself testified on this point, and the hearing officer was entitled to believe him. Additionally, Paul Torna testified at CT Page 3732 some length that he viewed Michaud's performance as poor, testimony which the hearing officer specifically found to be not credible. The hearing officer's conclusion that it would be impractical to reinstate Michaud under an employer who, in the hearing officer's judgment, had testified falsely and disparagingly about him, is neither arbitrary nor capricious and therefore should not be disturbed by this court. Tennes v.Massachusetts Dept. of Revenue, 944 F.2d 372 (7th Cir. 1991), (reinstatement not proper where the employee "would not enjoy the confidence or respect of current management"). Moreover, courts have upheld findings that reinstatement is particularly difficult for an employee who has held a management position. Closton v.Plitt Theatres, Inc., 831 F.2d 1321, 1331 (7th Cir. 1987). Michaud could not have avoided regular contact with Paul Torna if he had been reinstated, and the hearing officer was justified in concluding that Michaud and Torna could not have continued to work together. Under those circumstances, the award of front pay was appropriate.
Prejudgment Interest:
Michaud had requested that the hearing officer award prejudgment interest on the back pay portion of the award. The hearing officer did not discuss this issue in his decision and denied the joint motion of Michaud and the CHRO to reconsider, or in the alternative, to articulate his basis for not awarding prejudgment interest. Both Michaud and CHRO have cross appealed, urging this court to order prejudgment interest.
The hearing officer, upon a finding of discrimination, "has not merely the power but also the duty to render a decree which will, so far as possible, eliminate the discriminatory effects of the past as well as bar like discrimination in the future." CivilService Comm. v. CHRO, 195 Conn. 226, 230-31 (1985). Awarding prejudgment interest brings the injured worker closer to the same economic situation he would have been in but for the discrimination than does the entry of an award that does not include such interest.
Interpretations of federal employment discrimination laws support Michaud's position regarding prejudgment interest under CFEPA. CFEPA was intended to be coextensive with its federal counterpart, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 631 et seq.,CT Page 3733Wroblewski v. Lexington Gardens. Inc., 188 Conn. 44, 53 (1982);Pik-Kwik Stores. Inc. v. Commission on Human Rights andOpportunities, 170 Conn. 327, 331 (1976). Federal courts interpreting Title VII have established a strong presumption that prejudgment interest should be awarded in employment discrimination actions. Barbano v. Madison County, 922 F.2d 139,146 (2d Cir. 1990); Hunter v. Allis-Chalmers Corp., 797 F.2d 1417
(7th Cir. 1986) (in which the Seventh Circuit proposed making prejudgment interest mandatory). The Second Circuit has held that denying prejudgment interest will generally be an abuse of discretion. Clarke v. Frank, 960 F.2d 1146, 1154 (2d Cir. 1992);Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 62 FEP Cases 1315, 1323 (2d Cir. 1993). Prejudgment interest is necessary to give the plaintiff full relief, since the plaintiff was deprived of the use of the money represented by the back pay award.Williamson v. Handy Button Mach. Co., 817 F.2d 1290, 1297 (7th Cir. 1987) ("money today is simply not a full substitute for the same sum that should have been paid some time ago. Prejudgment interest therefore must be an ordinary part of back pay.") Further, the law-breaking party should not be permitted to have the free use of the money it was able to retain due to its illegal acts. Donovan v. Sovereign Sec. Ltd., 726 F.2d 55, 58 (2d Cir. 1984). An award of prejudgment interest is within the authority of a hearing officer, as was held by Judge Maloney inSilhouette Optical Limited v. CHRO ex rel. Russo,10 Conn. L. Rptr. 599 (January 27, 1994) (affirming an award of prejudgment interest at 10 percent compounded annually). ("Given that the purpose of back pay is to make the plaintiff whole, it can only be achieved if interest is compounded.").
This court therefore awards prejudgment interest on the back pay award at the rate of 10 percent, compounded annually. Based on the net back pay found by the hearing officer, prejudgment interest in the amount of $5,755.70 is awarded, computed as follows:[4]
CT Page 3734
______________________________________________________ | 1991 1992 1993 | | | |______________________________________________________| | Annual 6,399.08 9,849.38 9,415.38 | | Back | | Pay | |______________________________________________________| | Prior 0.00 6,399.08 16,248.46 | | Back | | Pay | |______________________________________________________| | Prior 0.00 0.00 639.91 | | Interest | |______________________________________________________| | Prior 0.00 6,399.08 16,888.37 | | Interest | | Back | | Pay | |______________________________________________________| | Interest 10% 10% 10% | | Rate | |______________________________________________________| | Total 0.00 639.91 1,688.84 | | Interest | |______________________________________________________|
________________________________________________________________ | | 1994 1995 Grand | | | Total | |__________|_____________________________________________________| | Annual | 9,415.38 1,395.31 | | Back | | | Pay | | |__________|_____________________________________________________| | Prior | 25,663.84 35,079.22 | | Back | | | Pay | | |__________|_____________________________________________________| | Prior | 2,328.74 5,128.00 | | Interest | | |__________|_____________________________________________________| | Prior | 27,992.58 40,207.22 | | Interest | | | Back | | | Pay | | |__________|_____________________________________________________| | Interest | 10% 10% | | Rate | | |__________|_____________________________________________________| | Total | 2,799.26 627.89 $5,755.90 | | Interest | | |__________|_____________________________________________________| CT Page 3735
Decree Enforcing the Decision: 
Pursuant to General Statutes § 46a-94a. "[t]he Court on appeal shall also have jurisdiction to . . . enter a decree enforcing or modifying or modifying and enforcing as so modified . . . the order sought to be reviewed."
In Miko v. CHRO, 220 Conn. 211-21, supra, the Court considered the defendants' counterclaim for enforcement and stated that the defendants' "entitlement to the order of enforcement is implicit in [its] decision reversing the trial court's judgment." The Court then directed the trial court to enter a decree enforcing the decision of the hearing officer.
The defendants in this case are entitled to a similar order, enforcing the hearing officer's decision as modified by the addition of prejudgment interest in the amount of $5,755.90.
Judgment will therefore enter denying the plaintiff's appeal and affirming the hearing officer's finding of discrimination and award of back pay and front pay. Judgment will also enter sustaining the cross appeals by awarding prejudgment interest of 10 per cent, compounded annually, on the back pay portion of the award, and entering a decree enforcing the hearing officer's award as thus modified. The total amount of the judgment is thus $87,505.84.
Jonathan E. Silbert, Judge.