## MOEY SEGAL *v.* LEONOR MIDVIDY SEGAL
### (AC 19485)

Landau, Schaller and O'Connell, Js.

Argued January 8—officially released August 14, 2001

*William C. Franklin*, for the appellant-appellee (plaintiff).

*Brian McCormick*, for the appellee-appellant (defendant).

*Opinion*

O'CONNELL, J. This is the plaintiff's appeal and the defendant's cross appeal from a supplemental judgment in a partition action between a former husband and wife who were divorced by virtue of a Nevada state court decree. Their Connecticut property, which they owned jointly with rights of survivorship,[1] was sold at a partition sale, and the issue before us involves the division of the sale proceeds. We affirm the judgment of the trial court on the appeal and on the cross appeal.

The plaintiff (former husband) claims that the court improperly (1) presumed that in the first instance the

---

[1] Although the parties variously have referred to themselves, as did the Nevada court, as tenants in common, tenants by the entirety (a type of tenancy not recognized in Connecticut) and joint tenants with rights of survivorship, it is apparent that they held title to the property as joint tenants with rights of survivorship.

net proceeds should be divided on a fifty-fifty basis, (2) failed to find that the plaintiff had rebutted the fifty-fifty presumption and (3) abused its discretion by awarding the defendant (former wife) money for the plaintiff's alleged breach of certain agreements. In her cross appeal, the defendant claims that the court improperly failed (1) to give full faith and credit to the Nevada judgment and (2) to award her all of the sale proceeds on the basis of the equities of the case.

The following facts and procedural history are necessary for disposition of these appeals. During their marriage, the parties purchased property in Goshen for $400,000. Their marriage was dissolved in 1988 in Nevada with a divorce decree that ratified and approved the parties' postnuptial agreements.[2] Those agreements provided that the parties would continue to hold title to the Goshen property as joint tenants, and that the plaintiff would pay all taxes, utilities and general maintenance fees until it was sold.

In 1992, the plaintiff ceased making payments to the defendant under the agreements and, in 1995, filed the present action in Connecticut seeking partition of the property. The defendant filed a counterclaim seeking the same remedy. On September 15, 1998, the court rendered judgment of partition by sale, which resulted in a sale of the property for $500,000 with the proceeds being paid into court. Neither party appealed from the partition judgment, but each filed a motion for a determination of the interests and equities of the parties in the sale proceeds.

The defendant thereafter instituted proceedings in Nevada seeking to declare the postnuptial agreements void or, in the alternative, to be awarded damages for the plaintiff's breach of those agreements. In August,

---

[2] There were two postnuptial agreements; the first was in June, 1988, and there was an amendment in September of that same year.

1998, the Nevada court denied the defendant's request to declare the agreements void but rendered judgment for her in the amount of $2.7 million for the plaintiff's breach of the agreements. The defendant filed the Nevada judgment in the Connecticut Superior Court pursuant to the Uniform Enforcement of Foreign Judgments Act, General Statutes §§ 52-604 to 52-609.

The net proceeds of the partition sale, after subtracting committee fees and expenses, were $496,411.54, 50 percent of which is $248,205.77. The court rendered a supplemental judgment awarding the plaintiff $159,422.58, representing 50 percent of the net proceeds, minus $88,783.19 for property related expenses paid by the defendant, which the court found should have been paid by the plaintiff. The defendant was awarded $336,988.96, representing her one-half interest plus reimbursement of her expenses. The plaintiff appealed from the supplemental judgment, and the defendant cross appealed. Additional facts are included in the discussion of individual issues.

I

PLAINTIFF'S APPEAL

The plaintiff first contends that the court improperly relied on a nonexistent rebuttable presumption that a spouse who purchases property with his separate funds and takes title jointly intends to make a gift of a one-half interest in the property to his spouse.

Before the court can determine the distribution of sale proceeds, it must first determine the legal interests of the parties in the property. The court relied on the principle recited in *Hackett* v. *Hackett*, 42 Conn. Sup. 36, 598 A.2d 1112 (1990), aff'd, 26 Conn. App. 149, 598 A.2d 1103 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992). In *Hackett*, the court stated that it is established in Connecticut and numerous other jurisdictions

that have considered the question that "where one spouse purchases property entirely with his or her funds and takes title in the names of both spouses jointly, a rebuttable presumption arises that a gift was intended to the other spouse of a one-half interest in the property." (Internal quotation marks omitted.) Id., 41; see *Osborne* v. *Osborne*, 384 Mass. 591, 602, 428 N.E.2d 810 (1981); *Oldham* v. *Oldham*, 58 R.I. 268, 275, 192 A. 758 (1937); *Sundin* v. *Klein*, 221 Va. 232, 236–37, 269 S.E.2d 787 (1980), cert. denied sub nom. *Cross* v. *Sundin*, 452 U.S. 911, 101 S. Ct. 3043, 69 L. Ed. 2d 414 (1981); 3 J. Pomeroy, Equity Jurisprudence (4th Ed. 1918) § 1039, p. 2354.

The plaintiff argues that the fifty-fifty presumption regarding partition is not good law in Connecticut because a partition action is equitable in nature; *Gaer Bros., Inc.* v. *Mott*, 147 Conn. 411, 415, 161 A.2d 782 (1960); and that the claims of the parties as to their interests in the property must be considered in connection with the distribution of the proceeds of the sale. "Although each party was the owner of an undivided one-half interest in the property, it does not follow that he or she will necessarily be entitled to equal shares of the moneys obtained from the sale. Equities must be considered and, if established, must be liquidated before distribution is ordered." *Levay* v. *Levay*, 137 Conn. 92, 96, 75 A.2d 400 (1950). Those authorities, however, should not be construed to mean that the fifty-fifty presumption does not exist, but only that the law starts with that presumption, which then may be rebutted by the evidence. The court found that the plaintiff failed to overcome the presumption. He offered no evidence that the parties ever intended that if the Connecticut property was sold, the proceeds would be divided other than equally. In fact, the evidence shows to the contrary. The parties' postnuptial agreements expressly provided for an equal division.

In *Vesce* v. *Lee*, 185 Conn. 328, 336, 441 A.2d 556 (1981), our Supreme Court recognized that unless there is an express agreement between the parties, there is a rebuttable presumption that payments made by one party, after the other party vacates the premises, continue to accrue for the benefit of both parties. The *Vesce* court held that the presumption had not been overcome in that case and that the plaintiff would share the proceeds equally with the defendant despite the fact that the party in possession—the defendant—had borne the expenses for maintenance, improvements and mortgage payments. Id., 337–38.

Both *Hackett* and *Vesce* are distinguishable from the case before us. In the present case, there were two express, written postnuptial agreements that the plaintiff would pay all of the expenses of the Connecticut property until it was sold. Accordingly, any sums that the defendant paid were in discharge of obligations that the plaintiff had agreed to assume. Under those circumstances, the court properly deducted those amounts from the plaintiff's share of the sale proceeds and added them to the defendant's share.

We affirm the judgment of the trial court on the plaintiff's appeal.

## II

## DEFENDANT'S CROSS APPEAL

The defendant claims that in addition to receiving half of the net proceeds, as the owner of an undivided one-half interest, she should be awarded the entire remainder of the proceeds on the basis of equitable claims against the plaintiff's one-half interest. She bases her equitable claims on (1) reimbursement of all expenses she paid relating to the property[3] and (2)

[3] In our analysis of the plaintiff's appeal in part I, we held that the defendant was entitled to reimbursement of those expenses. No additional discussion is required here.

partial satisfaction of the 1998 Nevada money judgment rendered against the plaintiff for his failure to honor his contractual obligations to pay spousal support pursuant to the postnuptial agreements.

The court expressly determined that it "[did] not believe that an attempt to resolve all the issues between these parties would be a wise exercise of its equitable powers in this partition action." The court declined to attempt to settle wide-ranging domestic disputes, running the gamut of custody, visitation and support, within the confines of this partition action. The court properly declined to become involved in the plethora of equitable issues that were enmeshed in the Nevada litigation. The court found that "[the parties'] equitable claims arise out of an extended, tortious, multistate postdissolution saga."[4] The court, therefore, limited the exercise of its equitable powers to settling the relations between the parties only insofar as they related to their interests, legal and equitable, in the property that was the subject of the partition sale. We agree with the court that while it must take the equities of the parties into consideration, it is proper to limit the equities to those directly related to the property that is the subject of the partition action. This partition action should not be converted into a family relations matter.

The remaining issue is the effect of the Nevada judgment on the court's decision. Because that is an issue of law, our review is plenary. *State* v. *Morascini*, 62 Conn. App. 758, 761, 772 A.2d 703, cert. denied, 256 Conn. 921, 774 A.2d 141 (2001). The defendant initially argues that the Nevada judgment was entitled to full

---

[4] In fact, the case is not merely multistate but is multinational. The plaintiff is a resident of the Bahamas, the defendant is a resident of Canada, the divorce and money judgments occurred in Nevada, and the partitioned real estate is in Connecticut.

faith and credit pursuant to the constitution of the United States, article four, § 1.[5]

"Under the full faith and credit clause of the constitution of the United States (article 4 § 1) and its implementing statute (62 Stat. 947, 28 U.S.C. § 1738), the judicial proceedings of a state must be given full faith and credit in every other state. The judgment rendered in one state is entitled to full faith and credit only if it is a final judgment, and the judgment is final only if it is not subject to modification in the state in which it was rendered. *Barber* v. *Barber,* 323 U.S. 77, 65 S. Ct. 137, 89 L. Ed. 82 [1944]; *Sistare* v. *Sistare,* 218 U.S. 1, 30 S. Ct. 682, 54 L. Ed. 905 [1910]." (Internal quotation marks omitted.) *Krueger* v. *Krueger,* 179 Conn. 488, 490, 427 A.2d 400 (1980).

The question here is whether the Nevada judgment was final and not subject to modification in that state. The record discloses that when the Connecticut court rendered its decision in the present case, the parties' appeals to the Supreme Court of Nevada were pending.[6] Because the result of the Nevada Supreme Court appeals could not be predicted, it was impossible for the Connecticut court to state that Nevada's judgment was final. The Nevada Supreme Court may modify that judgment. Accordingly, we conclude that the Nevada judgment was not entitled to full faith and credit because it was not final and was subject to modification.

We next consider the effect of the Uniform Enforcement of Foreign Judgments Act. General Statutes § 52-

---

[5] The constitution of the United States, article four, § 1, provides in relevant part: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. . . ."

[6] The defendant's withdrawal of her Nevada Supreme Court appeal is irrelevant because it was accomplished after the court decision here and also because the plaintiff's appeal remained pending in Nevada.

606[7] of that act provides that if an appeal of a foreign judgment is pending *or* if a stay of execution has been granted, the Connecticut court shall stay the enforcement of the foreign judgment. The defendant argues that under the Nevada rules of court, there was no stay in effect. That is irrelevant because our statute does not allow the foreign judgment to become enforceable if (1) there is a stay *or* (2) if an appeal is taken. The statute refers to appeals and stays in the disjunctive, not the conjunctive, so that the fact that an appeal was pending was sufficient reason for the court not to give effect to the Nevada judgment under the uniform enforcement statute. Accordingly, we conclude that the uniform enforcement statute does not affect our decision.

The defendant filed a judgment lien on the property on the basis of the Nevada judgment and the uniform enforcement statute, and released it on the order of the trial court. The defendant claims that the lien was transferred from the property to the sale proceeds. In view of our conclusion that the Nevada judgment was not enforceable, the judgment lien on which it was based was valueless. We affirm the judgment of the trial court on the defendant's cross appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] General Statutes § 52-606 (a) provides in relevant part: "If the judgment debtor shows the court that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution has been granted, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires or the stay of execution expires or is vacated, upon proof that the judgment debtor has furnished the security for the satisfaction of the judgment required by the state in which it was rendered. . . ."